**APPEAL NO.: 25-14527-A**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**SHANNON OLSON**

*Plaintiff-Appellant,*

**v.**

**TAKEDA PHARMACEUTICALS, AMERICA, INC.**

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA (TAMPA DIVISION)

CIVIL ACTION FILE NO. 8:23-cv-00590-TPB-CPT

---

**INITIAL BRIEF OF APPELLANT SHANNON OLSON**

---

April 10, 2026

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE</u>

1. Honorable Thomas P. Barber, United States District Judge for the Middle District of Florida

2. Rachel L. Dreher, Former Counsel for Plaintiff/Appellant

3. Dreher Law Group, Former Counsel for Plaintiff/Appellant

4. Law Offices of Jared M. Wichnovitz, P.C., Counsel for Plaintiff/Appellant

5. Law Office of Michael A. Yoder, PLLC, Former Counsel for Plaintiff/Appellant

6. Andrew M. McKinley, Esq. Counsel for Defendant/Appellee

7. Alex Meier, Former Counsel for Defendant/Appellee

8. Michael A. Mendoza, Former Counsel for Plaintiff/Appellant

9. Mendoza Family Law, Former Counsel for Plaintiff/Appellant

10. Mendoza Law, P.A., Former Counsel for Plaintiff/Appellant

11. Shannon Olson, Plaintiff/Appellant

12. Seyfarth Shaw LLP, Counsel for Defendant/Appellee

13. Takeda Pharmaceuticals America, Inc., Defendant/Appellee

14. Honorable Christopher P. Tuite, United States Magistrate Judge for the Middle District of Florida

15. Michael A. Yoder, Former Counsel for Plaintiff/Appellant

16. Yoder LaVeglia LLP, Former Counsel for Plaintiff/Appellant

17. Jared M. Wichnovitz, Counsel for Plaintiff/Appellant

C-1 of 1

Appellant, Shannon Olson, is an individual and has no parent corporations

or publicly held ownership interests to disclose.

C-2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Shannon Olson respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Eleventh Circuit Rule 28-1(c). This appeal presents substantial and consequential issues concerning the proper application of Federal Rule of Civil Procedure 60(b)(6), including whether a district court may resolve materially disputed factual issues, particularly those involving attorney abandonment, client notice, and credibility, without conducting an evidentiary hearing.

This case also raises important questions regarding the scope of "extraordinary circumstances" under Rule 60(b)(6), the proper standard for evaluating diligence where a litigant relies on counsel, and the distinction between strategic litigation decisions and functional abandonment.

The district court denied relief based on factual findings that were made without an evidentiary hearing despite directly conflicting evidence in the record. The resolution of these issues has broader implications for litigants who are deprived of a meaningful opportunity to be heard due to counsel's failures at the dispositive stage of litigation.

Because this appeal involves significant procedural and constitutional fairness concerns, and because oral argument would

i

materially assist the Court in resolving these issues, Appellant respectfully

requests that oral argument be granted.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSON…………………………………C-1

STATEMENT REGARDING ORAL ARGUMENT……………………….…i

TABLE OF CONTENTS……………………………………………………ii

TABLE OF AUTHORITIES…………………………………………………..iv

STATEMENT OF JURISDICTION………………………………………...vi

STATEMENT OF THE ISSUES………………………………………………1

INTRODUCTION………………………………………………………...2

STATEMENT OF THE CASE……………………………………………...4

    A. Nature of the Case……………………………………………………..4

    B. Proceedings in the District Court…………………………………………5

STANDARD OF REVIEW…………………………………………………11

SUMMARY OF THE ARGUMENT………………………………………..12

ARGUMENT……………………………………………………………...14

    I.    The district court abused its discretion by resolving material factual disputes without conducting an evidentiary hearing. …………………14

    II.    The district court misapplied Rule 60(b)(6) by failing to recognize that extraordinary circumstances existed. …………………………..20

    III.    The district court clearly erred in finding that Plaintiff failed to act with diligence and in mischaracterizing counsel's conduct as "strategic" rather than abandonment. ………………….………..25

        A. The record demonstrates that plaintiff acted diligently…………..29

        B. The district court improperly characterized counsel's conduct as "strategic"………………………………………………………...31

        C. The district court's findings cannot be sustained. …………………33

IV.    The district court erred in concluding that Plaintiff failed to demonstrate a meritorious claim and in failing to recognize that denial of relief results in manifest injustice. ……………..…………..33

CONCLUSION……………………………………………………………………...38

CERTIFICATE OF COMPLIANCE ……………………………………………40

CERTIFICATE OF SERVICE……………………………………………………..41

## TABLE OF AUTHORITIES

## CASES

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)………………………16,33

*Buck v. Davis*, 580 U.S. 100 (2017)…………………………..…………11,15,20,25

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)…………………36

*Griffin v. Swim-Tech Corp., 722 F.2d 677* (11th Cir. 1984)………………..……..15

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944)……...……..37

*Holland v. Florida*, 560 U.S. 631 (2010)……………………..………20,23,25,27,32

*Ismael v. Roundtree*, 161 F.4th 752 (11th Cir. 2025)………………………….…..36

*Klapprott v. United States*, 335 U.S. 601 (1949)………………………………30,37

*Lairsey v. Advance Abrasives Co*., 542 F.2d 928 (5th Cir. 1976)…………………30

*Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc)…………..35

*Link v. Wabash R.R. Co*., 370 U.S. 626 (1962)…………………………………….21

*Maples v. Thomas*, 565 U.S. 266 (2012)………………………..………………passim

*Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133 (2000)………………..36

*Smith v. Lockheed-Martin Corp*., 644 F.3d 1321 (11th Cir. 2011)……………….36

*Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc*.,

803 F.2d 1130 (11th Cir. 1986)…………………………………………………...21

*SunTrust Bank v. Houghton Mifflin Co*., 268 F.3d 1257 (11th Cir. 2001)………...11

*United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977)………………………15,23,28

## STATUTES

28 U.S.C. § 1291 ………………………………………………………………….vi

28 U.S.C. § 1294(1) …………………………………………………………………vi

28 U.S.C. § 1331 ………………………………………………………...…..vi

28 U.S.C. § 1367(a)…………………………………………………………………..vi

28 U.S.C. § 1367(c)…………………………………………………………………..vi

## OTHER AUTHORITIES

Fed. R. App. P. 34(a)(2) ……………………………………………………………i

11th Cir. R. 28-1(c) ………………………………………………………………...i

Fed. R. Civ. P. 60(b) ……………………………………………………………passim

## STATEMENT OF JURISDICTION

Jurisdiction for this proceeding was proper in the United States District Court for the Middle District of Florida under 28 U.S.C. § 1331, because Ms. Olson's claims arise under the Constitution and laws of the United States, including Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. The District Court also had supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to adjudicate any related state-law claims, which form part of the same case or controversy as Plaintiff's federal claims. Further, any such state-law claims did not present novel or complex issues of state law, nor did they predominate over Plaintiff's federal claims. See 28 U.S.C. § 1367(c).

The district court entered final judgment in favor of Defendant on January 29, 2025. (Doc. 81). Thereafter, Plaintiff timely filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). (Doc. 114). By endorsed order dated December 5, 2025, the district court denied Plaintiff's Rule 60(b) motion. That order constitutes a final, appealable order because it conclusively resolved Plaintiff's request for post-judgment relief.

Plaintiff timely filed a notice of appeal from the district court's December 5, 2025, order. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUES

I.    Did the district court abuse its discretion by denying Plaintiff's Rule 60(b)(6) motion without conducting an evidentiary hearing and by resolving materially disputed factual issues, particularly whether Plaintiff knowingly agreed to forego opposition to summary judgment or was instead deprived of representation, on a paper record without making proper credibility determinations?

II.   Did the district court misapply Federal Rule of Civil Procedure 60(b)(6) in concluding that no "extraordinary circumstances" existed, notwithstanding undisputed evidence that Plaintiff's counsel failed to oppose a dispositive motion, failed to conduct discovery, failed to depose key witnesses, and failed to meaningfully communicate with Plaintiff, thereby depriving her of a full and fair opportunity to be heard?

III.  Did the district court clearly err in finding that Plaintiff failed to act with diligence and in characterizing counsel's conduct as "strategic," where the record demonstrates that Plaintiff actively participated in her case, reasonably relied on counsel's representations, was informed only hours before the summary

1

judgment deadline that no opposition would be filed, and was effectively abandoned at the most critical stage of the litigation?

IV.   Did the district court err in concluding that Plaintiff failed to demonstrate a meritorious claim sufficient to warrant Rule 60(b) relief, where the judgment was entered on an undeveloped record due to counsel's failures, and where denying relief under these circumstances results in manifest injustice and undermines the integrity of the judicial process?

## **INTRODUCTION**

Consider this scenario: a litigant brings federal civil rights claims and retains counsel to prosecute her case. She participates in her case, provides documents, and works with her attorneys in anticipation of responding to a dispositive motion. She is led to believe that her claims will be defended on the merits. Then, without warning and only hours before a critical deadline, her attorneys inform her that no opposition will be filed. The deadline passes. The court, presented with only one side of the story, grants summary judgment. The litigant's claims are never heard.

When the litigant later seeks relief under Rule 60(b)(6), explaining that she did not knowingly waive her right to oppose summary judgment: that her lead counsel was operating under active bar suspension he never

2

disclosed to her or to the Court; that her substitute counsel lacked the complete case file and acknowledged having "NOTHING" to work with. Because of the breakdown in representation, her attorneys failed to conduct discovery, depose witnesses, or meaningfully present her case. The court denies relief without a hearing, resolves disputed facts on paper, and concludes that the failure to respond was "strategic." The Federal Rules of Civil Procedure do not permit such a result. Nor does basic fairness.

If a party knowingly elects to abandon her claims, she may be bound by that decision. But where the record reflects a breakdown in representation, a failure to litigate at the most critical stage, and a dispute over what the client knew or agreed to, courts do not simply accept one version of events over another without testing that evidence through proper procedures. A "choice" made without meaningful information, without adequate representation, and without a real opportunity to act is no choice at all. That is precisely what occurred here.

Appellant Shannon Olson's case was not resolved on the merits. It was resolved because no opposition to summary judgment was filed and because the evidentiary record was never developed. When Plaintiff sought relief under Federal Rule of Civil Procedure 60(b)(6), the district court denied that relief without conducting an evidentiary hearing, despite

3

directly conflicting evidence regarding whether Plaintiff knowingly agreed to forego opposition or was effectively deprived of representation.

The district court's decision rests on three critical errors. First, it resolved disputed issues of fact, particularly those involving credibility, attorney-client communications, and client knowledge without an evidentiary hearing despite directly conflicting sworn evidence. Second, it misapplied the Rule 60(b)(6) standard by failing to recognize that the complete failure to oppose summary judgment, combined with the absence of discovery and the breakdown in communication, constitutes extraordinary circumstances. Third, it clearly erred in concluding that Plaintiff failed to act diligently, ignoring record evidence demonstrating her active participation and the obstacles she faced in obtaining her case file after judgment was entered.

The result is a judgment entered without adversarial testing, sustained without proper factual development, and insulated from review by procedural error. This Court should not sanction that outcome.

## STATEMENT OF THE CASE

### A. Nature of the Case

This appeal arises from the denial of Plaintiff–Appellant Shannon Olson's motion for relief from judgment pursuant to Federal Rule of Civil Procedure

60(b)(6). Plaintiff sought relief from a summary judgment entered in favor of Defendant–Appellee Takeda Pharmaceuticals America, Inc., where no opposition to Defendant's dispositive motion was filed and where the evidentiary record was not meaningfully developed.

Plaintiff's underlying claims arise under federal law, including Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, and allege discrimination, retaliation, and related unlawful conduct during her employment with Defendant.

Plaintiff actively participated in her case and worked with counsel in preparation for responding to the motion. She provided documents, coordinated information, and communicated with counsel regarding the substance of her claims and the anticipated opposition. (Doc. 128 ¶¶ 10–18).

The central issue on appeal is whether the district court abused its discretion by denying Rule 60(b)(6) relief without conducting an evidentiary hearing and by resolving disputed factual issues concerning attorney conduct, client knowledge, and diligence on the basis of written submissions alone.

**B. Proceedings in the District Court**

Plaintiff initiated Plaintiff Shannon Olson worked for Defendant for over twenty-six years as a pharmaceutical sales representative, consistently receiving

strong performance evaluations, peer recognition, mentorship, contributions to her district and commendations from multiple managers. (Doc. 114-2). She filed suit in March 2023 alleging, among other unlawful conduct, failure to promote, race and disability discrimination, and retaliation. (Doc. 1).

The collapse of Plaintiff's representation began before the summary judgment deadline. Plaintiff's lead counsel was Michael A. Yoder, who appeared pro hac vice. (Doc. 8). On September 5, 2024, depositions of two corporate representatives provided by Takeda, were taken on the final days of the discovery period—the same day Yoder appeared before a Virginia State Bar disciplinary panel. (Doc. 85-1; Doc. 118-1 ¶ 2; VSB Order, Ex. T to Doc. 114-2). Six days later, on September 11, 2024, Yoder's six-month suspension from the Virginia bar became effective. (Id.). Yoder never disclosed this suspension to Plaintiff or to the Court. He remained on the docket. Sixteen days after his suspension took effect, Defendant filed its Motion for Summary Judgment. (Doc. 77). Plaintiff was never informed.

Co-counsel lacked the file and the record. Rachel Dreher, who had formally entered her appearance in September 2023, was not the lead attorney and did not possess the complete case file. This was confirmed by Dreher herself in June 2025 correspondence with new counsel, in which she wrote: "Mr. Yoder was Ms. Olson's attorney for years before I came into the matter. My representation was

limited to covering an appearance on a Motion to Dismiss, attending mediation (which Mr. Yoder attended and was lead on) and I filed one response to the Motion for attorney fees. All the other work and depositions and drafting were all done by Mr. Yoder. Therefore, I have limited information and access." (Doc. 128-2). Despite this, Dreher was effectively the only functioning attorney on the case at the time the summary judgment response was due.

Plaintiff acted diligently throughout. On October 16, 2024, less than three weeks before the November 1 deadline, Dreher communicated with Plaintiff as the attorney who would handle the response. (Doc. 128-1, Ex. A). On October 17, Plaintiff sent her deposition transcript to Dreher by FedEx. On October 18, when it became clear that Dreher had just received the file and could not prepare a response by the original deadline, Dreher filed a motion for extension, emailing Plaintiff: "I filed a motion today asking for a 2-week extension. The response was due today which is impossible with me just getting this paperwork and up to speed." (*Id.*). On October 28, just four days before the extended deadline, Dreher emailed Plaintiff the deposition transcripts for the first time, writing: "Attached are the depositions. We had some issues with downloading them [,] but it was corrected this morning. Please review and send me your notes ASAP. Our opposition is due this Friday." (*Id.*).

The night before the deadline, Dreher conditionally left the door open. On October 31, 2024 at 10:30 p.m., less than thirteen hours before the November 1 filing deadline, Dreher sent Plaintiff an email, copied to Yoder at both of his email addresses, in which she stated: "I have reviewed the file, defendant's motion for summary judgment, the depositions and other discovery and based upon my review there is no justifiable legal argument for me to raise in opposition of defendant's motion for summary judgment. I cannot in good faith put forth frivolous papers to the Court." However, she also wrote: "If you have any direct evidence of the racial discrimination or discrimination against you based on your disability please forward it to me first thing tomorrow morning. I will review the paperwork you send to determine if any of the evidence has merit and can be used to raise opposition. The opposition is due tomorrow." She further advised that she had "other cases and scheduled appointments tomorrow" and could not "guarantee a full day to drafting an opposition on the day it is due." (Doc. 128-1, Ex. B). Critically, this email was not a definitive statement that no filing would occur. It was a conditional request for evidence.

Plaintiff worked through the night. Upon receiving this email, Plaintiff stayed up through the night preparing materials. She sent documents to counsel and texted at 7:16 a.m. on November 1: "Good morning—I have not slept, been working. I emailed what I have so far." (Doc. 127-2 at 6). At 9:30 a.m., she confirmed: "I

8

received your email. I am still working and have some more facts—I am gathering more and will continue." (Id.). At 12:42 p.m., she asked to "please talk live" before any decision was made. (Id.). These are not the communications of a client who had been told, in advance, that no filing would occur.

At 3:55 pm on deadline day, Plaintiff learned for the first time that no filing would occur. At that hour, Dreher sent a text message stating: "I really don't have anything to use for opposition so I can't file. I also don't want to run up a bill on you when I can see legally [,] we don't have a path forward." (Doc. 127-2 at 13). Plaintiff responded: "We have until 11:59 pm. I'd rather respond with something and let Judge Barber decide then to say nothing at all and basically not show up." (Doc 127-2 pgs. 15 and 16) "What happens now—is it like we are a no show? (Document 127-2). These are not the words of a client who had consented to non-filing. They are the words of a client learning, for the first time, that her case had just been abandoned.

Three days later, Dreher confirmed the case was over. On November 4, 2024, Dreher texted Plaintiff: "Sorry for the delay. Basically [,] their Motion for Summary Judgement will be granted as it's unopposed and the case will be over." (Doc. 127-2 at 17). This was the first explicit statement that summary judgment would not be entered.

On January 29, 2025, the district court granted Defendant's Motion for Summary Judgment. (Doc. 81). Plaintiff monitored PACER throughout January and continued to communicate with counsel, texting on January 16, 2025: "I checked PACER and there is no record of the judge ruling. We have a case management conference scheduled next Thursday, January 23, 2025. While I know we did not respond to Takeda's Motion and you said the case was done, since there is no official ruling, do we attend?" (Doc. 127-2 at 17). Even after judgment, Plaintiff remained engaged and hoped her case was not over, texting on January 22: "I know we did not answer their motion [,] and you said my case is over, I have been praying and truly hope my case is not over." (*Id.* at 19).

Plaintiff encountered substantial obstacles in obtaining her case file. After retaining new counsel (Jared M. Wichnovitz, Esq.) in or around June 2025, the process of obtaining the complete case file required months of documented effort. Dreher, in June 2025 correspondence, advised new counsel that she had "limited information and access" and directed him to Yoder for the complete file. (Doc. 128-2). Yoder, as late as August 4, 2025, provided a file-access links to Plaintiff, stating: "I'm not sure why Rachel hasn't provided this to you; she had been sent this file and given access to it repeatedly." (Doc. 128-1, Ex. B). Without the complete file, it was not possible to prepare a Rule 60(b) motion. Once the file was assembled, Plaintiff filed her motion on October 14, 2025, approximately four

10

months after new counsel was retained, a reasonable time given these obstacles. (Doc. 114).

The district court denied Plaintiff's Rule 60(b)(6) motion by endorsed order dated December 5, 2025 (Doc. 129), without conducting an evidentiary hearing. In that order, the court concluded that Plaintiff had failed to demonstrate extraordinary circumstances and had not acted diligently. The court credited Dreher's post hoc declaration characterizing the non-filing as "strategic" and found that "Plaintiff provides zero explanation for her decision not to move to vacate the judgment until over eight and a half months after the entry of judgment." (Doc. 129). As detailed below, each of those conclusions is erroneous. This appeal followed.

## **STANDARD OF REVIEW**

This Court reviews a district court's denial of relief under Federal Rule of Civil Procedure 60(b)(6) for abuse of discretion. *Buck v. Davis*, 580 U.S. at 123. A district court abuses its discretion when it applies an incorrect legal standard, relies on clearly erroneous findings of fact, or fails to follow proper procedures in reaching its decision.

To the extent the district court's ruling rests on conclusions of law, this Court reviews those determinations de novo. See *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d at 1260. Findings of fact are reviewed for clear error. *Id*. A

11

finding is clearly erroneous where it is not supported by the record or where the reviewing court is left with a definite and firm conviction that a mistake has been made.

Where, as here, the district court resolves disputed factual issues, particularly those involving credibility, without conducting an evidentiary hearing, that determination is subject to careful appellate scrutiny. A district court necessarily abuses its discretion when it resolves material factual disputes on a paper record without providing the procedural safeguards required to assess credibility and weigh competing evidence.

## SUMMARY OF THE ARGUMENT

The district court's denial of Plaintiff's motion for relief under Federal Rule of Civil Procedure 60(b)(6) rests on a series of interrelated legal and procedural errors that resulted in the preservation of a judgment entered without adversarial testing and without a fully developed record. Each of these errors independently warrants reversal; collectively, they establish a clear abuse of discretion.

First, the district court improperly resolved materially disputed issues of fact, particularly those concerning attorney abandonment, client knowledge, and the circumstances surrounding the failure to oppose summary judgment, without conducting an evidentiary hearing. The failure to oppose summary judgment did not result from a considered litigation strategy, it occurred only after Plaintiff was

12

actively induced to continue preparing evidence up to the final hours before the deadline. The record contains directly conflicting sworn evidence as to whether Plaintiff knowingly agreed to forego opposition to a dispositive motion or was instead deprived of representation at the most critical stage of the litigation. By resolving these disputes on a paper record, the court made impermissible credibility determinations without the procedural safeguards required to ensure reliability. That error alone requires reversal and remand.

Second, the district court misapplied Rule 60(b)(6) by concluding that no "extraordinary circumstances" existed, notwithstanding undisputed evidence that Plaintiff's counsel failed to oppose summary judgment, failed to conduct discovery, failed to depose key witnesses, and failed to meaningfully communicate with Plaintiff regarding dispositive litigation decisions. These failures, taken together, resulted in the complete absence of adversarial testing and deprived Plaintiff of any meaningful opportunity to present her case. The district court's characterization of this conduct as "strategic" is unsupported by the record and reflects a failure to distinguish between ordinary negligence and a breakdown in representation.

Third, the district court clearly erred in finding that Plaintiff failed to act with diligence. The record demonstrates that Plaintiff actively participated in her case, provided information and documents to counsel, and reasonably relied on

counsel's representations that her claims were being properly litigated. After judgment was entered, Plaintiff encountered substantial delays in obtaining her case file, delays not of her making, which impeded her ability to promptly seek relief. By focusing narrowly on the passage of time while disregarding these circumstances, the district court misapplied the flexible, equitable standard governing diligence under Rule 60(b)(6).

Fourth, the district court erred in concluding that Plaintiff failed to demonstrate a potentially meritorious claim. Because no opposition to summary judgment was filed and no discovery was conducted, the court evaluated the merits on a materially incomplete record. Even so, the existing record reflects evidence of disparate treatment, comparator misconduct, retaliation, and pretext sufficient to satisfy the modest showing required under Rule 60(b). Plaintiff was deprived of the opportunity to present testimony and documentary evidence that would have further supported her claims had the case been properly litigated.

For all of these reasons, the district court's order should be reversed and the case remanded for an evidentiary hearing and further proceedings.

## ARGUMENT

I.    **The district court abused its discretion by resolving material factual disputes without conducting an evidentiary hearing**

14

The district court abused its discretion by denying Plaintiff's Rule 60(b)(6) motion without conducting an evidentiary hearing, despite the presence of directly conflicting evidence concerning whether Plaintiff knowingly agreed to forego opposition to summary judgment or was instead deprived of meaningful representation at the most critical stage of the litigation. Where material facts are in dispute in a Rule 60(b) proceeding, particularly those involving attorney conduct and client knowledge, an evidentiary hearing is required. See *United States v. Cirami*, 563 F.2d at 34; *Griffin v. Swim-Tech Corp.*, 722 F.2d at 680.

It is well established that a district court may not resolve material factual disputes, particularly those involving credibility, on a paper record where competing sworn evidence cannot be reconciled as a matter of law. Where a Rule 60(b) motion turns on disputed issues of attorney conduct and client knowledge, courts must permit factual development rather than resolve credibility based solely on written submissions. See *United States v. Cirami*, 563 F.2d at 34. See also *Griffin v. Swim-Tech Corp.*, 722 F.2d at 680 (reversing denial of Rule 60(b) relief where district court failed to adequately address disputed factual issues surrounding counsel's conduct). The failure to follow proper procedures in resolving such disputes constitutes an abuse of discretion. See *Buck v. Davis*, 580 U.S. at 123. That is precisely what occurred here.

Plaintiff submitted sworn testimony that she did not knowingly consent to the non-filing of an opposition to Defendant's motion for summary judgment and that she was informed only hours before the filing deadline that no opposition would be filed. (Declaration of Shannon Olson, Doc 114-2 ¶¶ 30–31). Plaintiff further attested that she was actively working with counsel to prepare an opposition and reasonably believed that a response would be filed. (*Id*.).

In contrast, former counsel Rachel Dreher submitted declarations asserting that the decision not to oppose summary judgment was "strategic." (Dreher Decl., Doc 127-1; Doc 127-2). These competing accounts are not merely different, they are irreconcilable. One reflects informed client consent; the other reflects a breakdown in representation at the dispositive stage.

Rather than resolving this dispute through an evidentiary hearing, the district court credited counsel's version of events and rejected Plaintiff's sworn account based solely on written submissions. In doing so, the court made an implicit credibility determination without the procedural safeguards necessary to ensure reliability. Credibility determinations based solely on written submissions, without the benefit of live testimony, are disfavored where competing accounts cannot be reconciled. See *Anderson v. City of Bessemer City*, 470 U.S. at 575. That was reversible error. The need for an evidentiary hearing is particularly acute here

16

because the factual dispute is reinforced, not resolved, by the objective record evidence.

Most notably, at the time Defendant filed its motion for summary judgment, Plaintiff's lead counsel, Michael Yoder, was subject to an active bar suspension arising from ongoing disciplinary proceedings, a fact unknown to Plaintiff. (VSB Order, Ex. T to Doc 114-2 at 1–4). The timing of that suspension is critical. Yoder appeared before a disciplinary panel on September 5, 2024, the same day depositions were conducted in this case, and his six-month suspension became effective on September 11, 2024, just sixteen (16) days before Defendant filed its motion for summary judgment on September 27, 2024. (*Id*.; see also Doc 85-1; Doc 118-1 ¶ 2). Whether Plaintiff was meaningfully represented at the dispositive stage under these circumstances presents a quintessential factual question that cannot be resolved without a hearing.

Compounding this issue, the contemporaneous text messages between Plaintiff and counsel, relied upon by the district court, directly contradict the assertion that the non-filing was a strategic decision. As of 3:29 PM on October 31, counsel represented: "I need to get this drafted and filed by tomorrow." (Text Messages, Doc 127-2 at 5). Plaintiff responded by working through the night to prepare supporting materials, stating: "I have neglected my children, life and work to get this to you… I know it needs to be strong." (*Id*. at 6).

17

These communications demonstrate that, as late as the eve of the deadline, both Plaintiff and counsel were operating under the understanding that an opposition would be filed. Counsel's subsequent statements further confirm that the failure to file was not strategic, but the result of an inability to proceed due to missing materials. Counsel stated: "I have NOTHING in my possession to counter these" and ultimately concluded, "I really don't have anything to use for opposition so I can't file." (*Id*. at 10–13). This is not evidence of strategy; it is evidence of incapacity.

The same messages further establish that substitute counsel lacked the case file and was unable to prepare an appropriate and sufficient filing. Critically, on the day of the deadline, counsel acknowledged that she was "discuss[ing] with Mike." (a suspended attorney who could not lawfully practice law.) (*Id*. at 10–11). Thus, Plaintiff's representation at the dispositive stage consisted of a suspended attorney and substitute counsel who lacked the file and relied on that suspended attorney for guidance. Whether this constitutes meaningful representation, or a total breakdown in the attorney-client relationship, is a disputed factual issue requiring evidentiary development. See *Maples v. Thomas*, 565 U.S. at 283.

The district court's reliance on in camera review further compounds the error. The court reviewed portions of the text message record outside the adversarial process and resolved the credibility dispute without permitting cross-

18

examination or contextual development. (See Doc 122; Doc 128; Doc 129). This deprived Plaintiff of any meaningful opportunity to challenge counsel's narrative or test the reliability of the evidence. A credibility determination based on untested submissions is precisely what an evidentiary hearing is designed to prevent.

In sum, the record presents a textbook credibility dispute: Plaintiff's sworn testimony that she did not knowingly agree to forego opposition is directly contradicted by counsel's post hoc characterization of events. That dispute is reinforced by contemporaneous communications demonstrating that counsel intended to file an opposition but was unable to do so due to the absence of necessary materials and the breakdown of representation.

The contemporaneous record does not merely conflict with counsel's declarations, it refutes them. On October 31, 2024, counsel did not inform Plaintiff that no opposition would be filed. Instead, counsel expressly left open the possibility of filing, requesting that Plaintiff submit additional evidence for review the following morning.  (Doc 127-2 at 5–6).

It was not until 5:59 PM on the day of the filing deadline that counsel stated, for the first time, that no opposition would be filed because she had "nothing" to work with. (Doc 127-2 at 10–13). Even more notably, prior counsel (Attorney Dreher) told new counsel she had "limited information and access" and was not responsible for the case. A declarant who admits she lacked access to the full

19

record cannot credibly claim that she made a fully informed strategic decision based on a comprehensive review of the case. This contradiction reinforces that the district court was required to conduct an evidentiary hearing before crediting her account.

Under these circumstances, the district court could not properly resolve the issue on a paper record. Its failure to conduct an evidentiary hearing constitutes an abuse of discretion and requires reversal.

## II.    The district court misapplied Rule 60(b)(6) by failing to recognize that extraordinary circumstances existed

The district court abused its discretion by concluding that no "extraordinary circumstances" justified relief under Federal Rule of Civil Procedure 60(b)(6), notwithstanding a record demonstrating that Plaintiff was effectively deprived of representation at the dispositive stage of the litigation. That conclusion reflects a misapplication of governing law and a failure to account for the undisputed factual record.

Rule 60(b)(6) serves as a "grand reservoir of equitable power" that permits courts to vacate judgments where necessary to accomplish justice in extraordinary circumstances. See *Buck v. Davis*, 580 U.S. at 123. Such circumstances arise where a litigant is deprived of a meaningful opportunity to be heard due to circumstances beyond her control, including serious attorney misconduct or a breakdown in the attorney-client relationship. See *Holland v. Florida*, 560 U.S. at 651–52; *Maples v.*

*Thomas*, 565 U.S. at 283. Such is the case here. Relief is particularly appropriate where a party is deprived of a meaningful opportunity to respond to a dispositive motion. See *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d at 1132–33. Although courts generally hold that clients are bound by their counsel's acts, see *Link v. Wabash R.R. Co.*, 370 U.S. at 633–34, that principle does not apply where the attorney-client relationship has effectively collapsed or where counsel ceases to function as the client's agent. See *Maples v. Thomas*, 565 U.S. at 283.

The record reflects that Defendant filed its motion for summary judgment on September 27, 2024, after the close of discovery and at a time when Plaintiff's lead counsel, Michael Yoder, was subject to an active bar suspension. (VSB Order, Ex. T to Doc 114-2 at 1–4). Yoder's six-month suspension became effective on September 11, 2024, following disciplinary proceedings in which he admitted to, among other things, failing to communicate with clients, failing to file required pleadings, and neglecting client matters. (*Id.*). These disciplinary findings mirror the very failures that occurred in Plaintiff's case.

The timing of these events is critical. On September 5, 2024, the same day depositions were conducted in this case, Yoder appeared before a Virginia State Bar disciplinary panel. (*Id.*; see also Doc 85-1; Doc 118-1 ¶ 2). Six days later, his suspension became effective. (Ex. T to Doc 114-2). Sixteen days after that,

Defendant filed its motion for summary judgment. Plaintiff was not informed that her lead counsel had been suspended and reasonably believed that her case continued to be actively litigated. (Declaration of Shannon Olson, Doc 114-2 ¶¶ 30–31). These facts establish that Plaintiff's representation at the dispositive stage existed in name only.

Compounding this breakdown, substitute counsel lacked the case file, had not participated in discovery, and was unable to prepare a sufficient opposition. The contemporaneous text messages confirm that counsel repeatedly stated she had "nothing" to work with and ultimately concluded that she could not file an opposition. (Text Messages, Doc 127-2 at 10–13). These are not the hallmarks of strategic decision-making; they are evidence of a complete inability to function as counsel.

Critically, on the day of the filing deadline, substitute counsel acknowledged that she was "discuss[ing] with Mike." (Again, a suspended attorney who could not lawfully practice law.) (*Id*. at 10–11). Thus, Plaintiff's purported "representation" consisted of a suspended attorney and substitute counsel who lacked the record and relied on that suspended attorney for guidance. Along with not having the complete case file, she also acknowledged that she did not possess the materials necessary to prepare a sufficient opposition. This is not representation; it is the collapse of representation.

22

The district court nevertheless characterized counsel's conduct as "strategic" and concluded that no extraordinary circumstances existed. That conclusion is untenable.

A "strategic decision" presupposes that counsel is functioning as an agent, exercising professional judgment based on a developed record and meaningful client communication. Here, none of those conditions were present. Counsel failed to oppose a dispositive motion, failed to conduct meaningful discovery, failed to depose key witnesses, and failed to maintain possession of the case file. These failures cannot reasonably be characterized as strategy.

The Supreme Court has made clear that where attorney conduct rises above "garden variety" negligence and results in a breakdown of representation, relief may be warranted. See *Holland v. Florida*, 560 U.S. at 651–52. Moreover, where counsel's actions sever the agency relationship, the client cannot be held responsible for those failures. See *Maples v. Thomas*, 565 U.S. at 283.

The circumstances here exceed those in cases where courts have granted Rule 60(b)(6) relief. In *United States v. Cirami*, the court granted relief where counsel failed to respond to summary judgment and failed to communicate with the client, leaving the client effectively unrepresented. 563 F.2d at 34. Here, the breakdown is more severe: Plaintiff's counsel was actively suspended, substitute

23

counsel lacked the record, and no meaningful opposition could be prepared or filed.

Additionally, the breakdown extended beyond the failure to file an opposition. Despite representing to the court that Plaintiff intended to take a Rule 30(b)(6) deposition covering numerous topics, counsel failed to depose any individual fact witnesses, comparators, or supervisors with direct knowledge of the alleged discrimination. (Doc 68 at 2; see also Doc 114-2). Only two corporate representatives were deposed, and those depositions occurred on the final day of discovery. (Doc 85-1; Doc 118-1 ¶ 2). This failure left the record materially undeveloped at the time summary judgment was filed. Taken together, these facts establish not mere negligence, but a total severance of the attorney-client relationship at the precise moment adversarial testing was required.

The record further demonstrates that the failure to oppose summary judgment was not the product of a considered strategic decision, but rather a last-hour breakdown in representation. On the evening before the deadline, counsel left open the possibility of filing an opposition and requested that Plaintiff provide additional evidence. (Doc 127-2 at 5–6). Plaintiff complied, working through the night to compile materials in support of her claims. (Doc 127-2 at 6). Only at 5:59 PM on the day of the deadline did counsel state that she could not file an

24

opposition because she had "nothing" to work with. (Doc 127-2 at 10–13). This sequence of events reflects not strategy, but incapacity.

Such last-minute abandonment, after inducing the client to believe that her claims would be presented, falls squarely within the type of extraordinary circumstances contemplated by Rule 60(b)(6).

Rule 60(b)(6) exists to address precisely this type of breakdown. Where a litigant is deprived of any meaningful opportunity to present her case due to the collapse of representation, the resulting judgment cannot be permitted to stand.

Each of these circumstances independently qualifies as extraordinary. Together, they present an even more compelling basis for relief. This was not a case where counsel made a calculated decision not to oppose summary judgment. It was a case where, until the final hours before the deadline, Plaintiff was led to believe that her claims would be defended, and then they were not.

By failing to recognize these circumstances as extraordinary, the district court misapplied Rule 60(b)(6) and abused its discretion.

## III. The district court clearly erred in finding that Plaintiff failed to act with diligence and in mischaracterizing counsel's conduct as "strategic" rather than abandonment

Rule 60(b)(6) serves as a "grand reservoir of equitable power" that permits courts to vacate judgments where necessary to accomplish justice in extraordinary circumstances. See *Buck v. Davis*, 580 U.S. at 123. Such circumstances arise where

25

a litigant is deprived of a meaningful opportunity to be heard due to circumstances beyond her control, including serious attorney misconduct or a breakdown in the attorney-client relationship. See *Holland v. Florida*, 560 U.S. at 651–52; *Maples v. Thomas*, 565 U.S. at 283.

The record reflects that Defendant filed its motion for summary judgment on September 27, 2024, after the close of discovery and at a time when Plaintiff's lead counsel, Michael Yoder, was subject to an active bar suspension. (VSB Order, Ex. T to Doc 114-2 at 1–4). Yoder's six-month suspension became effective on September 11, 2024, following disciplinary proceedings in which he admitted to, among other things, failing to communicate with clients, failing to file required pleadings, and neglecting client matters. (*Id.*). These disciplinary findings mirror the very failures that occurred in Plaintiff's case.

The timing of these events is critical. On September 5, 2024, the same day depositions were conducted in this case, Yoder appeared before a Virginia State Bar disciplinary panel. (*Id.*; see also Doc 85-1; Doc 118-1 ¶ 2). Six days later, his suspension became effective. (Ex. T to Doc 114-2). Sixteen days after that, Defendant filed its motion for summary judgment. Plaintiff was not informed that her lead counsel had been suspended and reasonably believed that her case continued to be actively litigated. (Declaration of Shannon Olson, Doc 114-2 ¶¶

26

30–31). These facts establish that Plaintiff's representation at the dispositive stage existed in name only.

Compounding this breakdown, substitute counsel lacked the case file, had not participated in discovery, and was unable to prepare an adequate opposition. The contemporaneous text messages confirm that counsel repeatedly stated she had "nothing" to work with and ultimately concluded that she could not file an opposition. (Text Messages, Doc 127-2 at 10–13). These are not the hallmarks of strategic decision-making; they are evidence of a complete inability to function as counsel.

Critically, on the day of the filing deadline, substitute counsel acknowledged that she was "discuss[ing] with Mike". (Id. at 10–11). Thus, Plaintiff's purported "representation" consisted of a suspended attorney and substitute counsel who lacked the record and relied on that suspended attorney for guidance. This is not representation, it is the collapse of representation. The district court nevertheless characterized counsel's conduct as "strategic". That conclusion is untenable.

A "strategic decision" presupposes that counsel is functioning as an agent, exercising professional judgment based on a developed record and meaningful client communication. Here, none of those conditions were present. Counsel failed to oppose a dispositive motion, failed to conduct meaningful discovery, failed to

27

depose key witnesses, and failed to maintain possession of the case file. These failures cannot reasonably be characterized as strategy.

The Supreme Court has made clear that where attorney conduct rises above "garden variety" negligence and results in a breakdown of representation, relief may be warranted. See *Holland v. Florida*, 560 U.S. at 651–52. Moreover, where counsel's actions sever the agency relationship, the client cannot be held responsible for those failures. See *Maples v. Thomas*, 565 U.S. at 283.

The circumstances here exceed those in cases where courts have granted Rule 60(b)(6) relief. In *United States v. Cirami*, the court granted relief where counsel failed to respond to summary judgment and failed to communicate with the client, leaving the client effectively unrepresented. 563 F.2d at 34. Here, the breakdown is more severe: Plaintiff's counsel was actively suspended, substitute counsel lacked the record, and no meaningful opposition could be prepared or filed.

Additionally, the breakdown extended beyond the failure to file an opposition. Despite representing to the court that Plaintiff intended to take a Rule 30(b)(6) deposition covering numerous topics, counsel failed to depose any individual fact witnesses, comparators, or supervisors with direct knowledge of the alleged discrimination. (Doc 68 at 2; see also Doc 114-2). Only two corporate representatives were deposed, and those depositions occurred on the final day of

28

discovery. (Doc 85-1; Doc 118-1 ¶ 2). This failure left the record materially undeveloped at the time summary judgment was filed.

Taken together, these facts establish not mere negligence, but a total severance of the attorney-client relationship at the precise moment adversarial testing was required.

Rule 60(b)(6) exists to address precisely this type of breakdown. Where a litigant is deprived of any meaningful opportunity to present her case due to the collapse of representation, the resulting judgment cannot be permitted to stand.

By failing to recognize these circumstances as extraordinary, the district court misapplied Rule 60(b)(6) and abused its discretion.

## A. The record demonstrates that plaintiff acted diligently

The district court's finding that Plaintiff failed to act diligently disregards the undisputed evidence that Plaintiff actively participated in her case, reasonably relied on counsel, and acted promptly once the breakdown in representation became clear.

Plaintiff worked with counsel in preparation for opposing Defendant's motion for summary judgment, providing documents, responding to requests, and remaining actively engaged in the litigation. (Declaration of Shannon Olson, Doc 114-2). As reflected in the contemporaneous text messages, Plaintiff worked through the night to prepare materials requested by counsel, stating: "I have

neglected my children, life and work to get this to you… I know it needs to be strong." (Text Messages, Doc 127-2 at 6). These actions are the very definition of diligence.

Critically, Plaintiff was not informed until the eve of the filing deadline that no opposition would be filed. As late as the afternoon before the deadline, counsel represented: "I need to get this drafted and filed by tomorrow." (*Id*. at 5). Plaintiff reasonably relied on this representation and continued working to support the filing. Under these circumstances, Plaintiff had no meaningful opportunity to secure new counsel or otherwise protect her interests before the deadline expired.

The district court's conclusion that Plaintiff should have acted sooner ignores the reality that Plaintiff was actively engaged and reasonably relying on counsel at the time the dispositive motion was due.

Following the entry of judgment, Plaintiff retained new counsel. However, new counsel encountered significant delays in obtaining the case file from prior counsel, which impeded Plaintiff's ability to promptly seek relief. (DE 114-2). Without access to the file and underlying materials, Plaintiff could not fully assess the status of her case or prepare an appropriate Rule 60(b) motion.

The law does not require a litigant to act with perfect speed under such circumstances. What constitutes a "reasonable time" under Rule 60(b) depends on the facts of each case and must account for practical realities, including reliance on

counsel and post-judgment investigation. See *Lairsey v. Advance Abrasives Co.*, 542 F.2d at 929. See also *Klapprott v. United States*, 335 U.S. at 613–14 (relief appropriate where litigant is unable to take timely action due to circumstances beyond his control).

Here, Plaintiff acted diligently at every stage: she participated in the litigation, relied on counsel, worked to support the summary judgment response, and pursued relief once the breakdown became clear. The district court's contrary finding is unsupported by the record and constitutes clear error. Plaintiff had no reason to seek alternative counsel or emergency relief prior to the deadline because, as late as October 31, counsel expressly indicated that an opposition could still be filed depending on the evidence provided the next morning.

**B. The district court improperly characterized counsel's conduct as "strategic"**

The district court further erred in characterizing counsel's conduct as "strategic," rather than recognizing it as a breakdown in representation. That characterization is incompatible with the undisputed record.

A "strategic decision" presupposes that counsel is functioning as an agent, possessing the case file, having conducted discovery, communicating with the client, and exercising informed professional judgment. None of those conditions were present here.

At the time of the summary judgment deadline, Plaintiff's lead counsel was operating under an active bar suspension. (VSB Order, Ex. T to Doc 114-2 at 1–4). Substitute counsel lacked the case file, had not participated in discovery, and repeatedly acknowledged that she had "nothing" with which to prepare an opposition. (Text Messages, Doc 127-2 at 10–13).

Counsel's own statements eliminate any notion of strategy. She stated: "I have NOTHING in my possession to counter these" and "I really don't have anything to use for opposition so I can't file." (*Id*.). These are not strategic judgments; they are admissions of inability.

Moreover, on the day of the deadline, substitute counsel acknowledged that she was consulting with Yoder, a suspended attorney who could not lawfully practice law. (Id. at 10–11). This further confirms that counsel was not exercising independent strategic judgment but was instead operating in a compromised and non-functional capacity.

The contemporaneous communications also show that the failure to file was not premeditated. As late as the day before the deadline, counsel represented that an opposition would be filed. (*Id*. at 5). A strategic decision to forego opposition would have been made, and communicated, well in advance. The record reflects the opposite: a last-minute collapse.

The Supreme Court has made clear that attorney conduct rising beyond "garden variety" negligence cannot be attributed to the client. See *Holland v. Florida*, 560 U.S. at 651–52. Where, as here, the attorney-client relationship effectively breaks down, the client is not bound by counsel's failures. See *Maples v. Thomas*, 565 U.S. at 283.

This case falls squarely within that principle. Counsel failed to oppose a dispositive motion, failed to conduct discovery, failed to maintain possession of the case file, and failed to communicate critical information to Plaintiff. These failures reflect not strategy, but a total breakdown in representation.

## C. The district court's findings cannot be sustained

Taken together, the district court's findings regarding diligence and strategy cannot be sustained under the clear error standard. The record demonstrates that Plaintiff acted diligently and that counsel was unable to function as an effective legal agent at the dispositive stage. By disregarding this evidence and characterizing the breakdown as strategy, the district court made findings that leave a "definite and firm conviction" that a mistake has been made. See *Anderson v. City of Bessemer City*, 470 U.S. at 573.

Because these findings formed a central basis for denying Rule 60(b)(6) relief, the error is not harmless. It requires reversal.

33

**IV.    The district court erred in concluding that Plaintiff failed to demonstrate a meritorious claim and in failing to recognize that denial of relief results in manifest injustice**

The district court's denial of Rule 60(b)(6) relief also rests on an erroneous conclusion that Plaintiff failed to demonstrate a meritorious claim sufficient to warrant reopening the judgment. That conclusion misapplies the governing standard and improperly evaluates the merits on a record that exists precisely because Plaintiff was deprived of a meaningful opportunity to litigate her case.

The district court further abused its discretion by concluding that Plaintiff failed to demonstrate a potentially meritorious claim sufficient to warrant relief under Rule 60(b)(6). That conclusion misapplies the governing standard and improperly evaluates the merits on a record that exists precisely because Plaintiff was deprived of a meaningful opportunity to litigate her claims.

A party seeking relief under Rule 60(b) is not required to prove that she will ultimately prevail on the merits. Rather, she need only demonstrate the existence of a potentially meritorious claim, one that is viable if the case is reopened and the record properly developed. This is a low threshold, designed to ensure that litigants are not denied relief where their claims have never been fairly tested through the adversarial process.

The district court did not apply that standard. Instead, it evaluated Plaintiff's claims on a materially incomplete record and concluded that Plaintiff had failed to

establish sufficient evidence of discrimination, retaliation, or pretext. That approach was erroneous. The record demonstrates that Plaintiff's case was never meaningfully developed.

Plaintiff identified numerous witnesses, including comparators and supervisors with direct knowledge of the alleged discriminatory and retaliatory conduct, yet none of these individuals were deposed. (Declaration of Shannon Olson, DE 114-2). Although counsel represented to the Court that Plaintiff intended to take a Rule 30(b)(6) deposition covering a "significant number of topics" requiring coordination with multiple witnesses, only two corporate representatives were ultimately deposed. (Doc 68 at 2; see also Doc 85-1; Doc 118-1 ¶ 2). Those depositions occurred on the final day of discovery, leaving no opportunity to pursue follow-up discovery or develop the factual record.

No individual fact witnesses, comparators, or supervisors were deposed at any point in the litigation.

This absence of evidence is not indicative of a lack of merit—it is the direct result of counsel's failure to conduct discovery and develop the record. The district court's reliance on this undeveloped record to deny relief effectively penalizes Plaintiff for her counsel's inability to function. Even on this limited record, however, Plaintiff presented evidence sufficient to meet the modest threshold required under Rule 60(b).

Plaintiff identified comparators who were treated more favorably despite engaging in similar or more serious conduct, satisfying the framework articulated in *Lewis v. City of Union City*, 918 F.3d at 1227–28. Plaintiff also presented evidence of pretext and retaliatory conduct, sufficient under *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 147, and *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 68. Additional evidence supports a "convincing mosaic" of discrimination and retaliation under *Smith v. Lockheed-Martin Corp.*, 644 F.3d at 1328.

Moreover, the district court's approach is inconsistent with recent Eleventh Circuit authority governing summary judgment in employment cases. In *Ismael v. Roundtree*, the court reversed summary judgment where the district court improperly focused on whether the plaintiff had proven pretext, rather than evaluating whether the totality of the evidence could permit a reasonable inference of unlawful conduct. 161 F.4th at 758–60. The Eleventh Circuit emphasized that courts must consider whether the record, viewed as a whole, presents a "convincing mosaic," rather than requiring plaintiffs to conclusively disprove the employer's explanation at the summary judgment stage.

Here, the district court committed the same error in a more extreme form. It evaluated Plaintiff's claims on a one-sided and undeveloped record, created by counsel's failure to oppose summary judgment, and then concluded that Plaintiff

36

failed to establish sufficient evidence. Under *Ismael*, that approach is improper. The question is not whether Plaintiff conclusively proved her claims on an incomplete record, but whether the available evidence, together with the evidence that would have been developed through discovery, could permit a reasonable jury to find in her favor. The answer is yes.

Plaintiff's evidence, even in its limited form, demonstrates potential comparator disparities, retaliatory conduct, and pretext. With the benefit of proper discovery, including testimony from the numerous witnesses identified by Plaintiff, the record would have been materially different.

Courts have long recognized that Rule 60(b) relief is appropriate where a judgment is entered without meaningful adversarial testing. See *Klapprott v. United States*, 335 U.S. at 613–14; see also *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. at 246. This case falls squarely within that principle.

The district court's refusal to reopen the judgment under these circumstances results in manifest injustice.

Plaintiff's claims were never heard on a fully developed record. No opposition to summary judgment was filed. No meaningful discovery was conducted. No witness testimony was presented. Judgment was entered not because Plaintiff's claims lacked merit, but because her counsel failed to act.

37

Allowing that result to stand would elevate procedural failure over substantive justice and undermine confidence in the judicial process. Rule 60(b)(6) exists to prevent precisely this outcome.

Because Plaintiff has demonstrated a potentially meritorious claim and because denial of relief under these circumstances results in manifest injustice, the district court's order should be reversed.

## **CONCLUSION**

This case was not resolved on the merits. It was resolved because, at the dispositive stage of the litigation, no attorney was functioning as Plaintiff's advocate. Plaintiff's lead counsel was subject to an active bar suspension, substitute counsel lacked the case file and evidentiary record, and no opposition to summary judgment was filed. Plaintiff, unaware of these circumstances, continued to work with counsel and reasonably believed that her claims would be presented. Instead, judgment was entered against her on a one-sided and undeveloped record.

When Plaintiff sought relief under Rule 60(b)(6), the district court denied that relief without conducting an evidentiary hearing, resolved disputed issues of fact based on written submissions, and characterized a complete breakdown in representation as "strategy." Each of those determinations was erroneous. Taken together, they resulted in the preservation of a judgment entered without meaningful adversarial testing.

Rule 60(b)(6) exists to prevent precisely this outcome. Where a litigant is deprived of any meaningful opportunity to be heard due to the collapse of representation, and where the resulting judgment rests on an incomplete and untested record, relief is not merely appropriate, it is required to preserve the integrity of the judicial process.

Accordingly, Plaintiff-Appellant respectfully requests that this Court reverse the district court's order denying relief under Rule 60(b)(6) and remand this matter with instructions to conduct an evidentiary hearing and for further proceedings on a fully developed record.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

By: /s/*Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

39

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7) because the argument of this brief contains <u>5302</u> words as

counted by the word processor in Microsoft Word. This brief complies

with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type

style requirements of Fed. R. App. P. 32(a)(6).

**LAW OFFICES OF JARED
M. WICHNOVITZ, P.C.**

By: /s/ *Jared M. Wichnovitz*

Jared M. Wichnovitz, Esq.

EDF# 334082767

50 Harrison Street, Suite 206, P.O. Box 631

Hoboken, New Jersey 07030

Phone: (732) 765-2157

Fax: (732) 358-0178

Email: Jared@WichnovitzLaw.com

*Attorneys for Plaintiff-Appellant, Shannon Olson*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 10th day of April 2026 I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using PACER'S CM/ECF system. I also certify that the foregoing document is being served this day upon all counsel of Record via PACER'S CM/ECF system.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

By:/s/*Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

41