**APPEAL NO. 25-14527**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**SHANNON OLSON**

*Plaintiff–Appellant,*

v.

**TAKEDA PHARMACEUTICALS AMERICA, INC.**

*Defendant–Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CIVIL ACTION FILE NO. 8:23-CV-00590-TPB-CPT
THE HON. THOMAS P. BARBER, JUDGE PRESIDING

**BRIEF OF DEFENDANT–APPELLEE**

Andrew M. McKinley
amckinley@seyfarth.com
Shannon R. Cherney
scherney@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Defendant–Appellee*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, 26.1-3, and 26.1-4, counsel for Defendant–Appellee Takeda Pharmaceuticals America, Inc. hereby submits the following Certificate of Interested Persons:

1. Honorable Thomas P. Barber, District Judge for the U.S. District Court for the Middle District of Florida

2. Rachel L. Dreher, Former Counsel for Plaintiff–Appellant

3. Dreher Law Group, Former Counsel for Plaintiff–Appellant

4. Law Offices of Jared M. Wichnovitz, P.C., Counsel for Plaintiff–Appellant

5. Jared M. Wichnovitz, Counsel for Plaintiff–Appellant

6. Law Office of Michael A. Yoder, PLLC, Former Counsel for Plaintiff–Appellant

7. Yoder LaVeglia LLP, Former Counsel for Plaintiff–Appellant

8. Michael A. Yoder, Former Counsel for Plaintiff–Appellant

9. Andrew M. McKinley, Counsel for Defendant–Appellee

10. Shannon R. Cherney,  Counsel for Defendant–Appellee

11. Michael A. Mendoza, Former Counsel for Plaintiff–Appellant

12. Mendoza Family Law, Former Counsel for Plaintiff–Appellant

13. Mendoza Law, P.A., Former Counsel for Plaintiff–Appellant

14. Shannon Olson, Plaintiff–Appellant

i

15.     Seyfarth Shaw LLP, Counsel for Defendant–Appellee

16.     Takeda Pharmaceuticals America, Inc. (TAK), Defendant–Appellee

17.     Honorable Christopher P. Tuite, Magistrate Judge for the U.S. District Court for the Middle District of Florida

## CORPORATE DISCLOSURE STATEMENT

Defendant–Appellee Takeda Pharmaceuticals America, Inc. is a wholly owned subsidiary of Takeda Pharmaceutical Company Limited and Takeda Pharmaceuticals International AG. Takeda Pharmaceuticals International AG is a directly held wholly owned subsidiary of Takeda Pharmaceutical Company Limited. Takeda Pharmaceutical Company Limited has no parent company and no publicly held corporation owns 10% or more of its stock.

Defendant–Appellee further certifies that it is not aware of any other identifiable legal entities related to a party that have an interest in the outcome of this particular case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is not necessary because the dispositive issues have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

CORPORATE DISCLOSURE STATEMENT ....................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CITATIONS .................................................................................... vii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 1

STATEMENT OF THE CASE .............................................................................. 2

I.     NATURE OF THE CASE AND PROCEDURAL BACKGROUND ...... 2

II.    STATEMENT OF FACTS ......................................................................... 6

III.   STANDARD OF REVIEW ...................................................................... 15

SUMMARY OF THE ARGUMENT ................................................................... 18

ARGUMENT ....................................................................................................... 20

A.      The District Court Did Not Abuse Its Discretion in
        Concluding that Olson Had Not Established Extraordinary
        Circumstances Under Rule 60(b)(6)...............................................21

        1.      *The District Court Did Not Abuse Its Discretion in*
                *Finding that Olson Failed to Act Diligently, Either Before*
                *or After the Entry of Judgment.*.................................................22

        2.      *Olson Was Not "Abandoned," and Her Arguments*
                *Simply Raise Disagreements with the Strategic Decisions*
                *of Her Counsel.* ..........................................................................28

B.      Olson Failed to Establish that She Had a Claim that
        Probably Would Have Been Successful. .......................................35

C.      The District Court Did Not Commit Clear Error in
        Declining to Hold an Evidentiary Hearing. .................................39

CONCLUSION .............................................................................................40

CERTIFICATE OF COMPLIANCE ...................................................................42

# TABLE OF CITATIONS

**Cases**                                                                    **Page(s)**

*Akins v. Fulton County,*

　278 F. App'x 964 (11th Cir. 2008) ...................................................................38

*Algaba v. Fla. Dep.'t of Corr.,* No. 22-12545, 2026 WL 972838 (11th

　Cir. 2026)..........................................................................................................35

*Arrington v. United Parcel Serv.,*

　384 F. App'x 851 (11th Cir. 2010) ............................................................15, 16

*Arthur v. Thomas,*

　739 F.3d 611 (11th Cir. 2014).........................................................................15

*Bethea v. Sec'y, Fla. Dep't of Corrs.,*

　No. 20-12642-F, 2020 U.S. App. LEXIS 32807 (11th Cir. Oct.

　16, 2020) ...........................................................................................................23

*In re Bonfiglio,*

　No. 18-8004, 2018 WL 5295879 (6th Cir. Oct. 24, 2018)..............................31

*Cano v. Baker,*

　435 F.3d 1337 (11th Cir. 2006)..................................................................16, 40

*Chavez-DeRemer v. Med. Staffing of Am., LLC,*

    147 F.4th 371 (4th Cir. 2025).................................................................31

*Fla. Physician's Ins. Co. v. Ehlers,*

    8 F.3d 780 (11th Cir. 1993)...................................................................25

*Gonzalez v. Crosby,*

    545 U.S. 524 (2005)..............................................................................21

*Grant v. Pottinger-Gibson,*

    725 F. App'x 772 (11th Cir. 2018) ......................................................16

*Griffin v. Swim-Tech Corp.,*

    722 F.2d 677 (11th Cir. 1984)..............................................................21

*Haynes v. McCalla Raymer, LLC,*

    793 F.3d 1246 (11th Cir. 2015).............................................................17

*Holland v. Florida,*

    560 U.S. 631 (2010)..............................................................................28

*Hurley v. Moore,*

    233 F.3d 1295 (11th Cir. 2000).............................................................34

*Jenkins v. Anton,*

    922 F.3d 1257 (11th Cir. 2019).............................................................39

*Juday v. Merck & Co Inc,*

    799 F. App'x 137 (3d Cir. 2020) ........................................................34

*Kramer v. Gates,*

    481 F.3d 788 (D.C. Cir. 2007)..........................................................32

*Link v. Wabash R. Co.,*

    370 U.S. 626 (1962)..........................................................................34

*Maples v. Thomas,*

    565 U.S. 266 (2012)..........................................................................28

*Maradiaga v. United States,*

    679 F.3d 1286 (11th Cir. 2012)........................................................16

*Mills v. Comm'r, Ala. Dep't of Corrs.,*

    102 F.4th 1235 (11th Cir. 2024)......................................................17

*Palmer v. Mandarin Holiday Marina & Fish Camp, Inc.,*

    478 F. App'x 543 (11th Cir. 2012) .................................................15

*Ritter v. Smith,*

    811 F.2d 1398 (11th Cir. 1987)........................................................23

*S.E.C. v. Simmons,*

    241 F. App'x 660 (11th Cir. 2007) .................................23, 26, 27, 34

ix

*Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.,*

    803 F.2d 1130 (11th Cir. 1986)......................................................16, 34, 35, 39

*United States v. Cirami,*

    563 F.2d 26 (2d Cir. 1977) .............................................................................28

*United States v. Davenport,*

    668 F.3d 1316 (11th Cir. 2012)......................................................................34

*United States v. Frazier,*

    387 F.3d 1244 (11th Cir. 2004).......................................................................16

*United States v. One Rural Lot #11,*

    93 F. App'x 241 (1st Cir. 2004)......................................................................25

*Valdez v. Feltman,*

    328 F.3d 1291 (11th Cir. 2003).......................................................................26

*Vasconcelo v. Miami Auto Max, Inc.,*

    851 F. App'x 979 (11th Cir. 2021) .................................................................39

*Wainwright v. Sec'y, Fla. Dep't of Corrs.,*

    No. 20-13639, 2023 WL 4582786 (11th Cir. July 18, 2023)..........................16

**Other Authorities**

11th Cir. R. 30-1(b)................................................................................................2

Fed. R. Civ. P. 60(b) .................................................................. 15, 16, 21, 31, 35, 39

Fed. R. Civ. P. 60(b)(6) .............. 1,  5, 15, 16, 17, 19, 20, 22, 25, 26, 32, 34, 35, 40

Fla. R. Prof'l Conduct 4-3.1 ............................................................................31, 33

Rule 60(b)(1) .....................................................................................................34

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

1.      Whether the district court acted within its discretion in holding that Appellant failed to establish the extraordinary circumstances required for post-judgment relief under Federal Rule of Civil Procedure 60(b)(6).

2.      Whether Appellant failed to establish, with respect to each of the claims for which judgment was entered against her, that she had claims that were probably meritorious.

3.      Whether the district court acted within its discretion in concluding that an evidentiary hearing was unnecessary to its resolution of Appellant's Rule 60(b)(6) motion.

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE AND PROCEDURAL BACKGROUND[1]

On March 15, 2023, Appellant Shannon Olson filed a 102-page, 15-count complaint against Appellee Takeda Pharmaceuticals America, Inc. and eight other defendants. (Appellant's App. Vol. 1, Tab 21, at A017–102.) After a series of motions to dismiss and amended complaints, the court expressed serious concern about the ultimate merits of Olson's claims, but allowed the following claims against Takeda to survive to discovery[2]: (1) race-based disparate treatment under Title VII of the Civil Rights Act of 1964; and (2) disability discrimination under the Americans with Disabilities Act and Florida Civil Rights Act of 1992 ("FCRA") related to alleged disparate treatment, failure to accommodate, failure to promote, retaliation, and hostile work environment. (R. 56; R. 57; R. 62, at 5–7.)[3]

---

[1] Because a Rule 60(b)(6) motion is at issue in this appeal, the procedural background and facts relevant to the disposition of the motion have significant overlap. Thus, many aspects of the procedural background are set forth in greater detail in the Statement of Facts below.

[2] On January 23, 2024, the district court dismissed Olson's claims for religious discrimination in Counts II and III of the third amended complaint—the final operative pleading—with prejudice. (R. 62, at 8.)

[3] Pursuant to 11th Cir. R. 30-1(b), Takeda will be submitting a supplemental appendix within seven days of the filing of this response brief in order to

Undeterred by the district court's admonition, Olson commenced discovery through counsel, serving and responding to discovery requests, providing a document production to Takeda, appearing for her own deposition, and taking two 30(b)(6) depositions. (Appellant's App. Attachment #5, Tab 730, at A778 ¶ 2.[4]) On September 27, 2024, after the conclusion of discovery, Takeda filed a motion for summary judgment on Olson's remaining claims. (Appellant's App. Vol. 2, Tab 218, at A251–76.)

After her deadline to respond was extended to November 1, 2024, Olson's counsel, following discussions with Olson concerning the lack of merit in her claims, made the strategic decision not to oppose the motion because no good-faith argument could be made. (R. 127-1, at 3–4 ¶ 4.) Olson was aware prior to the deadline passing that a response would not be filed, and she was aware for the nearly three months that Takeda's summary

---

correct deficiencies in Olson's appendix and because Takeda relies on parts of the record not included in Olson's appendix. Record documents relied on by Takeda, yet improperly included in Olson's appendix—those without a file stamp header from the district court, with pages missing, or out of order (Appellant's App. Vols. 1–2, 5, at Tabs 134, 261, 788, 879, 950)—are cited herein as a reference to the record.

[4] As part of her Appendix, Olson included an "Attachment #5" that seemingly continues the documents included in Volume 4 of her Appendix at Tabs 673 and 730.

judgment motion was pending that no response had been filed. (R. 127-2, at 13–14, 17; Appellant's App. Vol. 2, Tab 264, at A312.) And she elected to do nothing prior to the court entering an order granting Takeda's motion for summary judgment on January 29, 2025. (Appellant's App. Vol. 2, Tab 244, at A277–93.) That order relied overwhelmingly on Olson's own deposition admissions, in ruling that her claims could not survive summary judgment. (*Id.*) The entry of judgment immediately followed. (R. 82.)

It was only on October 14, 2025 — 348 days after her summary judgment response deadline had passed, after a report and recommendation and order were entered finding that Takeda was entitled to attorneys' fees and expenses resulting from Olson's frivolous claims (Appellant's App. Vol. 2, Tab 286, at A319–336[5]), and after Takeda had filed a motion requesting that the fee and expense amount be set at over $349,000.00 (R. 113) — that Olson filed a motion for relief from the judgment under Rule 60(b)(6). (Appellant's App. Vol. 2, Tab 304, at A337–57.)

---

[5] Olson's index does not list that R. 108, Order Adopting Report & Recommendation, is also included in Volume 2 of the Appendix at A335 through A336.

After receiving the Parties' submissions, including multiple text communications between Olson and her counsel, Rachel Dreher, the district court denied Olson's Rule 60(b)(6) motion. (Appellant's App. Vol. 2, Tab 304, at A337–57; Appellant's App. Vol. 5, Tab 775, at A799–806[6]; R. 125; R. 127–29.) In so doing, the district court observed that (1) Olson "ha[d] not shown that she acted diligently while the motion for summary judgment was pending; (2) Olson had not acted diligently "after the Court ruled adversely to her on the motion and entered judgment against her"; (3) Olson's communications with her counsel made clear that her claim that Dreher had "'abandoned' her and that she did not know about the strategic decision not to respond to the summary judgment motion" were, "at best, inaccurate"; and (4) Olson's request to vacate the judgment was "made only when confronted with the possibility of an award of attorneys' fees against her," which "certainly does not justify relief from a final judgment under Rule 60(b)(6)." (R. 129.) Olson then filed a notice of appeal. (R. 130.)

---

[6] Olson's index does not list that R. 124, Plaintiff's Reply in Support of Her Motion for Relief from Judgment Under Rule 60(b), is also included in Volume 5 of the Appendix at A799 through A806.

## II.   STATEMENT OF FACTS

On July 11, 2023, nearly four months after this lawsuit was filed, Michael Yoder was specially admitted as counsel for Olson. (R. 16.) On September 27, 2023, amidst briefing on multiple motions to dismiss, Rachel Dreher entered an appearance as counsel for Olson. (Appellant's App. Vol. 1, Tab 132, at A128–29.) On January 9, 2024, the parties and their counsel (including Dreher) attended mediation. (Doc. 58.)

Discovery then commenced, and Olson, through her counsel, actively participated in it. That included her exchanging written discovery requests, responses, and a document production (Appellant's App. Attachment #5, Tab 730, at A778 ¶ 2); attending her own deposition on August 15, 2024. (R. 77-1); and conducting 30(b)(6) depositions covering a wide range of topics (Appellant's App. Attachment #5, Tab 730, at A778 ¶ 2).

On September 27, 2024, Takeda filed a motion for summary judgment, relying heavily on Olson's admissions during her deposition. (Appellant's App. Vol. 2, Tab 218, at A251–76.) That motion included, among other things, the transcript of Olson's deposition testimony, which was available to Olson on the public docket. (R. 77-1.) Dreher handled the review of

Takeda's motion and assessment of Olson's potential response. (R. 127-1 at 2–4 ¶¶ 2–5.)

On October 16, 2024, Olson sent Dreher a copy of Olson's deposition transcript and a copy of a timeline related to her claims. (R. 128-1, at 5–6.) On October 18, 2024, Olson—through Dreher—filed a motion to extend the deadline to respond to the summary judgment motion to November 1, 2024. (R. 78.) In that motion, Olson represented that she had needed time to compile "paperwork" for the response, and that she had provided the same to Dreher that week. (*Id.* at 2 ¶¶ 9–10.) The court granted the extension, moving the response deadline to November 1, 2024. (R. 79.)

On October 28, 2024, Dreher emailed Olson copies of the transcripts from the two Rule 30(b)(6) depositions and requested that Olson review them and provide any notes. (R. 128-1, at 12.) On October 31, 2024, Dreher emailed Olson, stating:

> Please be advised that I still have not received your comments on the defendant's motion for summary judgment or any proof that you have that contradicts the papers filed by Defendant.

> I have reviewed the file, defendant's motion for summary judgment, the depositions and other discovery and based upon my review there is no justifiable legal argument for me to raise in opposition of defendant's motion for summary judgment. I cannot in good faith put forth frivolous papers to the Court.

If you have any direct evidence of the racial discrimination or discrimination against you based on your disability please forward it to me first thing tomorrow morning. I will review the paperwork you send to determine if any of the evidence has merit and can be used to raise opposition. The opposition is due **tomorrow**.

Please be advised that I do have other cases and scheduled appointments tomorrow. I am unable to guarantee a full day to drafting an opposition on the day it is due. I will review your paperwork and determine if an opposition is appropriate, upon receipt, but based on the information I have, the defendant appears to be correct, based on discovery in this case, there appears to be no sustainable cause of action.

Upon review of the paperwork, if I am provided with valid evidence that I can use in support of our opposition, I will do my best to draft an opposition, given the very short timeframe I will have to do so.

Please contact me ASAP with any information that you have that supports your claims and directly contradicts the . . . [the remaining statements are cut off from view in Olson's filing].

(R. 128-1, at 13–14; *see also* 127-1, at 2–4 ¶¶ 2–5.)

The two also exchanged text messages that day and the following day, on November 1, 2025, in which Dreher outlined her concern with Olson's inability to articulate competent support for her claims and the possibility that a filing would open the door to sanctions, including the following:

- "Their Motion for Summary Judgment is VERY strong so we need specific facts regarding the discrimination. Nothing else is going to really have an effect on this decision. I need something to point the Court to, to support our claim of race

discrimination and disability discrimination and as [of] right now I have nothing."(R. 127-2, at 5.)

- "Shannon while I appreciate everything you sent me it's not what I need to beat their motion. I need specific examples of how YOU were discriminated against based on race and disability with evidence proving the allegations. Please explain your basis for each of the claims. Let's start with disability. If you did receive the full leave time and all the compensation you were entitled to how were you discriminated against? I need specifics of who was aware of the disability and how they used it to discriminate against you. I think we have major issues with both claims since the black employee was fired for bad performance but you were not and they paid you for your leave and ultimately granted the disability. Please focus solely on those issues with proof I can use to back it up—as of right now I don't see anything possibly to pull together to file." (*Id.* at 7–8.)

- "The issues is we have to deal with what we have in front of us and based on the papers and evidence they put forth I have nothing to counter with. . . . All I'm saying is the elements that we need to prove discrimination based on race or disability just aren't there. Although there is only a concern about being sanctioned if we submit frivolous papers I literally just don't have any evidence that supports our position while they have quite a bit. These are not easy claims to prove. I discussed with Mike and a lot came out in discovery he was unaware of. That's very common once all the cards are shown it's a different picture than when first presented. I'm going to send some of the papers from Defendant that lay out the elements we need to prove. It's almost 3 pm and I just have NOTHING in my possession to counter these. If you have PROOF of those 4 elements I need it immediately. These are the particular points I have nothing to counter with." (*Id.* at 10–11.)

- "I just have nothing to work with here. I have spent the entire week looking for ANY angle to go with to try and keep the case alive so we could push for settlement but I have found nothing I can work with." (*Id.* at 12.)

- "I really don't have anything to use for opposition so I can't file. I also don't want to run up a bill on you when I can see legally we don't have a path forward." (*Id.* at 13.)

In response to Dreher's expressed concern about the nonsensical nature of a race discrimination claim based on the suggestion that an individual who was black had been treated more favorably, when that individual had been terminated but Olson was not, Olson effectively admitted that she never believed she had a basis for that claim. (*Id.* at 8.) Specifically, she stated that she "did not want to go down the DEI road." (*Id.*)

After Olson failed to satisfy Dreher's request for specific details that could sustain a claim of race or disability discrimination, Dreher explained to Olson that she "really [didn't] have anything to use for opposition so [she couldn't] file" and that she didn't want to "run up a bill" for Olson "when [Dreher] c[ould] see legally [they] d[id]n't have a path forward." (*Id.* at 13.) Olson then instructed Dreher, in part: "Don't run up a bill." (*Id.* at 14.) Olson later added that she "did kinda know it was done awhile back." (*Id.* at 16.)

Ultimately, Dreher made the strategic decision that an opposition to summary judgment could not be filed that would comply with Rule 11 of the Federal Rules of Civil Procedure. (R. 127-1, at 3–4 ¶ 4.) And a response was thus not filed on the November 1, 2024 deadline.

The next day, Olson texted Dreher, "Hi- so what happens now? What can I expect?" (R. 127-2, at 17.) Dreher responded on November 4, 2024, as follows: "Sorry for the delay. Basically their Motion for Summary Judgement will be granted as it's unopposed and the case will be over." (*Id.*) On November 19, 2024, Dreher then sent the following email to Takeda's counsel:

> I am reaching out because as you can see we did not oppose your motion for summary judgment. There was a lot of information that came out during discovery that we were unaware of and so we wanted to see if you would be willing to stipulate to a discontinuance of the matter?

(Appellant's App. Vol. 2, Tab 264 at A312.) Takeda declined to accept the invitation to abandon its right to collect attorneys' fees, costs, and expenses that resulted from Olson's frivolous claims. (R. 98, at 4.)

Olson did not submit any filings to the court between November 2024 and January 2025, such as a request to extend her original response deadline,

to file a response out of time, or to remove her counsel of record. Instead, Olson texted Dreher on January 16, 2025, stating:

> I checked pacer and there is no record of the judge ruling. We have a case management conference scheduled next Thursday, January 23, 2025. While I know we did not respond to Takeda's Motion and you said the case was done. Since there is no official ruling, Do we attend?

(R. 127-2, at 17.)

On January 29, 2025, the district court granted Takeda's Motion for Summary Judgment, and it entered final judgment in favor of Takeda the next day. (Appellant's App. Vol. 2, Tab 244, at A277–93; R. 82.) Although Takeda's motion was unopposed by Olson, the district court issued a seventeen-page opinion analyzing each of Olson's claims and the deficiencies in them, pointing primarily to Olson's own admissions. (Appellant's App. Vol. 2, Tab 244, at A277–93.)

As to her racial discrimination claims, it observed that (1) "none of the [actions cited by Olson] constitute an adverse employment action" (*id.* at A282–85); and (2) Olson had not established any viable comparator (*id.* at A285–86). For her failure-to-accommodate claims, the district court held that not only could Olson not show any failure to engage in an interactive process, but she had been able to take her full short-term disability leave and

was paid all short-term disability benefits—i.e., that Olson's initial claim of not being accommodated was directly disproven by Olson's own admissions. (*Id.* at A287.) The district court also observed that Olson's disability discrimination claims "lack record factual support." (*Id.* at A288.) That was because she recanted each of the issues cited as a basis for the claims in her third amended complaint once deposed. (*Id.*) The court further observed that Olson had no evidence that any decisionmaker knew of any disability she may have had prior to taking any action. (*Id.* at A288–89.) As to her failure to promote claims, it observed that Olson was required to show she was qualified for a promotion, but that the record showed that she was not qualified for the promotion she had placed at issue. (*Id.* at A289.) The district court additionally observed that she had not identified any comparator for the claim—i.e., a nondisabled individual chosen for the promotion. (*Id.*) As to Olson's retaliation claims, the district court held that there was no record evidence of (1) a "materially adverse action" or (2) causation between a protected activity and adverse action. (*Id.* at A290–91.) Finally, as to her hostile work environment claim, the district court observed that there was "no evidence of harassment at all." (*Id.* at A291.)

Dreher promptly informed Olson of the summary judgment ruling. (R. 127-1, at 4 ¶ 5.)

On February 13, 2025, Takeda filed a motion for the district court to determine whether it was entitled to an award of attorney's fees and expenses in light of Olson's frivolous claims, as well as a proposed bill of costs. (Appellant's App. Vol. 2, Tab 264, at A297–310; R. 85.) Dreher discussed the same with Olson (R. 127-1, at 4 ¶ 5), including by informing Olson that she "believe[d] the Court [wa]s going to find in [Takeda's] favor" (R. 128-1, at 8). Nevertheless, Olson, through Dreher, filed an opposition to the fee-entitlement motion on March 20, 2025. (R. 91.)

On June 11, 2025, Jared Wichnovitz appeared as counsel for Olson, and Dreher withdrew on June 24, 2025. (Appellant's App. Vol. 2, Tab 284, at A317–18; R. 106.)

On July 1, 2025, the magistrate judge recommended that Takeda's fee-entitlement motion be granted. (Appellant's App. Vol. 2, Tab 286, at A319–34.) Olson did not file objections to the report and recommendations, and on July 18, 2025, the district court adopted it. (*Id.* at A335–36.) Pursuant to the district court's local rules, Takeda then filed a supplemental motion to

determine its amount of attorney's fees on September 30, 2025, requesting an award of $339,418.66. (R. 113.)

On October 14, 2025, faced with the prospect of a significant fee award, Olson filed a motion for relief from the district court's judgment under Rule 60(b), requesting that the district court vacate its summary judgment ruling and reopen the case to allow Olson to oppose summary judgment or, in the alternative, shift the award of Takeda's attorney's fees and expenses to be paid by her former counsel. (Appellant's App. Vol. 2, Tab 304, at A337–57.)

## III.    STANDARD OF REVIEW

"Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014). Specifically, the Eleventh Circuit's review is for an abuse of discretion. *Arrington v. United Parcel Serv.*, 384 F. App'x 851, 852 (11th Cir. 2010). Relief under Rule 60(b) "is extraordinary and requires exceptional circumstances," and "even when circumstances are sufficiently extraordinary to warrant relief, the grant or denial of relief is a matter for the district court's sound discretion." *Id.* The same deferential standard applies to both a district court's findings of fact and to the denial of a request for an evidentiary hearing to resolve a Rule 60(b)(6) motion. *See, e.g., Palmer v. Mandarin Holiday*

*Marina & Fish Camp, Inc.*, 478 F. App'x 543, 544 (11th Cir. 2012) (holding that the Eleventh Circuit will "only disturb a district court's finding of facts if the findings were clearly erroneous"); *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (applying the clear error standard to the denial of a request for an evidentiary hearing on a rule 60(b)(6) motion).

"The Rule 60(b) movant's burden is a heavy one on appeal." *Grant v. Pottinger-Gibson,* 725 F. App'x 772, 776 (11th Cir. 2018). That is because it requires an appellant to "do more than show that a grant of [the] motion might have been warranted." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012). Instead, "[t]his deferential review means that [an appellate court] will sometimes affirm the district court even though [it] might have ruled differently had it been [the appellate court's] call." *Wainwright v. Sec'y, Fla. Dep't of Corrs.*, No. 20-13639, 2023 WL 4582786, at *4 (11th Cir. July 18, 2023). Thus, "[t]he abuse of discretion standard gives a district court a 'range of choice' as long as its decision is not a 'clear error of judgment.'" *Id.* (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004)). And "a district court's denial of a Rule 60(b) motion will not be overturned unless the appellant demonstrates that the district court was required to grant relief." *Arrington*, 384 F. App'x at 852; *accord Solaroll Shade & Shutter Corp. v.*

*Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986) ("[A]ppellant must demonstrate a justification so compelling that the court was required to vacate its order.").

Moreover, under the abuse-of-discretion standard, a ruling may be affirmed "on any ground supported by the record." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015); *accord Mills v. Comm'r, Ala. Dep't of Corrs.*, 102 F.4th 1235, 1241 (11th Cir. 2024) (applying the foregoing principle to Rule 60(b)(6) motions).

## SUMMARY OF THE ARGUMENT

Appellant Shannon Olson filed a series of claims in the district court that never had any basis in fact or law. (R. 56; R. 57; R. 62, at 5–7.) At the conclusion of discovery, Olson's counsel — Rachel Dreher — understood that reality and engaged in a series of communications with Olson in which she repeatedly explained her belief that there was simply no evidentiary or legal basis for Olson to oppose summary judgment. (R. 128-1, at 13–14; *see also* 127-1, at 2–4 ¶¶ 2–5; R. 127-2, at 5, 7–8, 12–13.) Although Dreher invited any additional evidence that Olson may have supporting a viable claim, Olson could not provide it. (*Id.*) Dreher ultimately expressed her concern that a frivolous filing could result in sanctions, before informing Olson that she could not file an opposition to the motion, given the lack of a factual basis to do so. (R. 127-1, at 3–4 ¶ 4; R. 127-2, at 13–14, 16.)

Olson was fully aware that no summary judgment response had been filed on the November 1, 2024 deadline. (R. 127-2, at 7–8, 11-13, 17.) Nevertheless, she filed nothing between that date and the court's entry of summary judgment order. She provides no explanation for that inaction. Even after judgment was entered, she continued to submit filings through

Dreher. (Appellant's App. Vol. 2, Tab 264, at A314-16[7]; R. 89; R. 91; R. 97.) In fact, it was only four-and-a-half months later—after Takeda's motion to determine its entitlement to attorneys' fees and expenses was fully briefed—that new counsel appeared for Olson. (Appellant's App. Vol. 2, Tab 264, at A297–310; R. 85; R. 91; Appellant's App. Vol. 2, Tab 284, at A317–18.) Olson provides no explanation in her brief for her inaction with respect to the summary judgment ruling during those four-and-a-half months. Even after her new counsel appeared, she did not file a rule 60(b)(6) motion until another four months later—shortly after Takeda requested a fee-and-expense award of $339,418.66. (Appellant's App. Vol. 2, Tab 304, at A337–57; R. 113, at 10.)

In light of those facts, the district court properly exercised its discretion in concluding that Olson had failed to establish the extraordinary circumstances required for Rule 60(b)(6) relief. (*See infra* Part A.) Denial of the motion was independently warranted by the fact that she did not establish that her claims would probably be meritorious—a fact that is

---

[7] Olson's index does not list that R. 88, Joint Notice of Local Rule 3.91(g) Communication, is also included in Volume 2 of the Appendix at A314 through A316.

unsurprising, given that summary judgment was based, in large measure, on Olson's own deposition testimony. (*See infra* Part B.) Moreover, the district court acted wholly within its discretion—particularly given the record of communications between Olson and Dreher—in determining that it did not need an evidentiary hearing to resolve Olson's Rule 60(b)(6) motion. (*See infra* Part C.)

The district court's summary judgment ruling should thus be affirmed.

## ARGUMENT

Olson's burden in showing that the district court abused its discretion in denying her Rule 60(b)(6) motion is high, and she comes nowhere close to satisfying it. *First*, the district court acted within its discretion in determining that Olson had failed to establish the extraordinary circumstances that are required for relief under Rule 60(b)(6). *Second*, Olson failed to establish— either in the trial court or on appeal—that she has claims that would probably be meritorious, which itself dooms her request under Rule 60(b)(6). *Finally*, the district court acted within its discretion in concluding that an evidentiary hearing was not required to resolve the motion. Each of these issues will be discussed, in turn, in the following sections.

### A. The District Court Did Not Abuse Its Discretion in Concluding that Olson Had Not Established Extraordinary Circumstances Under Rule 60(b)(6).

In general, Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of her case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence. *Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005). Relief under Rule 60(b)(6), however, requires a ground "other than the more specific circumstances set out in Rules 60(b)(1)–(5)," *id.*, and is an extraordinary remedy which may be invoked only upon a showing of "exceptional circumstances." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

On appeal, Olson argues that she experienced exceptional circumstances through supposed "abandonment" by her counsel. In attempting to characterize her argument in this manner, Olson effectively asks—as she did below—that this Court "pay no attention to the man behind the curtain." The district court reviewed the relevant record, including Olson's communications with Dreher—the attorney who handled the evaluation of her summary judgment response—and determined that her claim is "at best, inaccurate." (R. 129.) The argument also inaccurately and

incompletely addresses the facts and caselaw relevant to the exceptional-circumstances analysis under Rule 60(b)(6) motions.

Indeed, Olson's motion fails from a number of defects that each independently preclude her from claiming the existence of exceptional circumstances. She failed to establish that she acted diligently, either before or after summary judgment was entered. Moreover, Olson ignores the extensive record, including her own communications, making clear that Olson was not in any sense "abandoned" by Dreher — the attorney handling the assessment of her potential summary judgment response. Rather, her claim of abandonment amounts to nothing more than a disagreement with the strategic decisions of her counsel, including Dreher's conclusion that a summary judgment response could not be filed in good faith, which is not a ground for Rule 60(b)(6) relief. These issues will be discussed, in turn, below.

      **1.**    *The District Court Did Not Abuse Its Discretion in Finding that Olson Failed to Act Diligently, Either Before or After the Entry of Judgment.*

In denying Olson's motion, the district court observed that Olson "ha[d] not shown that she acted diligently while the motion for summary judgment was pending, or after the court ruled adversely to her on the motion and entered judgment against her." (R. 129.) The district court did

not abuse its discretion in reaching that conclusion, which is fully supported by the record.

"[T]ime is relevant" to the question of whether extraordinary circumstances exist, and "[t]he longer the delay [between a judgment and Rule 60(b)(6) motion,] the more intrusive is the effort to upset the finality of the judgment." *See Ritter v. Smith*, 811 F.2d 1398, 1401–03 (11th Cir. 1987). Thus, "[r]ule 60(b)(6) relief is unavailable when the petitioner has not acted diligently in pursuing review of the issue." *Bethea v. Sec'y, Fla. Dep't of Corrs.*, No. 20-12642-F, 2020 U.S. App. LEXIS 32807, at *2 (11th Cir. Oct. 16, 2020). That duty to act diligently encompasses a party's "duty to monitor the progress of his case." *S.E.C. v. Simmons*, 241 F. App'x 660, 664 (11th Cir. 2007). Relatedly, "inaction" or an "inexplicable delay" in acting demonstrates a lack of diligence. *Id.*

Critically, Olson does not attempt to offer any explanation as to why she took no action at all between the November 1, 2024 response deadline and the January 29, 2025 summary judgment order to protect her interests, had she truly believed a summary judgment response could have been filed in good faith. Dreher stated plainly to Olson on November 1, 2024, that she "can't file" after Olson could not provide "specific examples of how [she

was] discriminated against based on race and disability with evidence proving the allegations because" and thus "the elements that we need to prove discrimination based on race or disability just aren't there." (R. 127-2, at 7–8, 11–13.) On November 4, 2024, Dreher again told Olson, "[b]asically their Motion for Summary Judgement will be granted as it's unopposed and the case will be over." (*Id.* at 17.) And on January 22, 2024, Olson confirmed that she had been monitoring the electronic docket on PACER and that she "kn[e]w we did not respond to Takeda's Motion and [Dreher] said the case was done." (*Id.*)

Yet Olson took no action between November 1, 2024, and January 29, 2025. (*Id.* at 17, 19; Appellant's App. Vol. 2, Tab 264, at A312.) She did not file a motion to extend her response deadline prior to the November 1, 2024 deadline expiring. Nor did she remove Dreher as counsel at that point or file a motion to file a response out of time. Instead, despite her admitted full awareness that no response had been filed, she elected to simply do nothing and wait on the district court to enter its summary judgment order. Similarly, to the extent she levels criticisms concerning the scope of discovery taken by her counsel, she provides no explanation as to why she took no action to address such supposed issues prior to discovery closing or

prior to judgment being entered. Such inaction in addressing known issues is simply not diligence, and Olson's appellate brief wholly fails to address the foregoing. *See, e.g.*, *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (holding an appellant showed lack of diligence in defending his suit because he "[did] nothing to ensure that his interests were being sufficiently represented"); *United States v. One Rural Lot #11*, 93 F. App'x 241, 242–44 (1st Cir. 2004) (observing that a plaintiff's "inaction" prior to the entry of judgment was "caused by his own neglect" and thus could not support relief under Rule 60(b)(6)).

While Olson's failure to act diligently prior to the entry of judgment is dispositive, her conduct after the entry of judgment only compounds her lack of diligence. Olson only presents the superficial argument that, following the entry of judgment, she "retained new counsel," who allegedly "encountered significant delays in obtaining the case file from prior counsel, which impeded Plaintiff's ability to promptly seek relief." (Appellant's Br. at 39.) But that argument is doubly flawed, and it ignores the roughly *eight-and-a-half months* that passed between the entry of judgment and the filing of her Rule 60(b)(6) motion.

*First*, Olson's argument ignores that she did not retain new counsel until June 11, 2025—four-and-a-half months after judgment had been entered, nearly four months after a bill of costs was filed, and over two-and-a-half months after Olson, through Dreher, opposed Takeda's motion to determine its entitlement to fees and expenses. (Appellant's App. Vol. 2, Tab 264, at A297–310; R. 85; R. 91; R. 98; R. 100.) Olson again provided no explanation—let alone an extraordinary one—for her inaction with respect to the judgment for those four-and-a-half months. *See*, *e.g.*, *Simmons*, 241 F. App'x at 664 (holding that "waiting over four months" precluded relief); *Valdez v. Feltman*, 328 F.3d 1291, 1298 (11th Cir. 2003) (holding that a two-month delay was too long). Instead, that inaction confirmed precisely what the district court held: that Olson pursued her motion "only when confronted with the possibility of an award of attorney's fees against her," which "certainly does not justify relief from a final judgment under Rule 60(b)(6)." (R. 129.)

*Second*, even with respect to her retention of her new counsel on June 11, 2025, she did not identify any sufficient explanation for her decision to delay the filing of a Rule 60(b)(6) motion for four *additional* months. In the interim, Olson waited for a report and recommendation to issue finding that

Takeda was entitled to fees and expenses as a result of her frivolous claims (Appellant's App. Vol. 2, Tab 286, at A319–34), for the court to enter an order adopting that report and recommendation (*Id.* at A335-36), and for Takeda to file a supplemental motion to determine its attorney fee award (R. 113). Again, Olson sat on her hands until faced with the reality of Takeda's request for $339,418.66 to be awarded against her. (R. 113, at 10.)

In only the most superficial terms, Olson claims that her attorney experienced "delays in obtaining the case file," which supposedly prevented her from "fully assess[ing] the status of her case or prepare an appropriate Rule 60(b) motion." (Appellant's Br. at 39.) Perhaps unsurprisingly, Olson provides no explanation as to why that is so. For example, she does not identify a *single* specific document she needed from her prior counsel to file a Rule 60(b)(6) motion, particularly given that her motion is predicated on alleged abandonment by her counsel. *See, e.g.*, *Simmons*, 241 F. App'x at 664 (finding no diligence when an appellant did "not explain why it took four months for new counsel to prepare an answer that consists of general denials, two short affidavits, and the motion to vacate"). In fact, the record establishes that Olson had all deposition transcripts prior to November 1, 2025 (R. 127-2, at 4; R. 128-1, at 6, 12); had prepared a timeline of events prior

to November 1, 2025 (R. 128-1, at 6); was well aware of who had not been deposed while she was still represented by Dreher, even prior to the summary judgment deadline (R. 128-1, at 8; R. 127-2, at 8); and had personal access to PACER and thus had access to all filings (R. 127-2, at 17).

Simply put, the only thing extraordinary about Olson's 60(b)(6) motion is her own extreme delay in filing it. She did not act diligently either before or after judgment was entered, or before or after she retained new counsel. And the district court thus did not abuse its discretion in concluding that her lack of diligence precluded Rule 60(b)(6) relief.

### 2. Olson Was Not "Abandoned," and Her Arguments Simply Raise Disagreements with the Strategic Decisions of Her Counsel.

Although Olson makes a cursory claim of "abandonment" by her counsel,[8] the record makes clear that she was not abandoned at any point during the underlying litigation. Olson, through her counsel, actively

---

[8] Olson cites to a number of cases that simply have no relation to the facts at issue in this case. For example, this case does not involve a "psychological disorder," unavailability to the court, false representations about attending to business or "complete[]" neglect of a clients business. *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977). Nor does it involve a failure "to communicate with [a] client over a period of years," *Holland v. Florida*, 560 U.S. 631, 652 (2010), or a lack of "notice" because there was no "functioning attorney of record," *Maples v. Thomas*, 565 U.S. 266, 288–29 (2012).

participated in discovery, including by exchanging written discovery requests, responses, and a document production (Appellant's App. Attachment #5, Tab 730, at A778 ¶ 2); attending her own deposition on August 15, 2024. (R. 77-1); and conducting 30(b)(6) depositions covering a wide range of topics (Appellant's App. Attachment #5, Tab 730, at A778 ¶ 2).

Olson's brief wastes much ink concerning the fact that *one* of her attorneys, Michael Yoder, ultimately faced a bar disciplinary proceeding in another jurisdiction concerning a different matter. But that is nothing more than a red herring. That is because, when she claims she was "effectively deprived of representation at the dispositive motion stage of the litigation" (Appellant's Br. at 29), she simply glosses over the fact that the summary judgment stage was handled by her *other* attorney, Rachel Dreher. Thus, to the extent Yoder's participation was limited by his disciplinary proceeding, Olson still remained represented—with strategic decisions made—by an attorney with no such infirmities at the summary judgment stage.

And as the district court rightly observed, Olson's claim of abandonment by Dreher is "at best, inaccurate." (R. 129.) Indeed, the record reflects extensive communications between Dreher and Olson in the lead-up to her summary judgment response deadline, dating back to at least October

16, 2024. (Appellant's Br. at 16–17; R. 128-1, at 5.) Those communications outlined Dreher's serious concerns with the merits of Olson's claims. (R. 127-1; R. 127-2; R. 128-1.) Among other things, Dreher laid out the obvious incoherence in Olson's claims:

> Shannon while I appreciate everything you sent me it's not what I need to beat their motion. I need specific examples of how YOU were discriminated against based on race and disability with evidence proving the allegations. *Let's start with disability. If you did receive the full leave time and all the compensation you were entitled to how were you discriminated against?* I need specifics of who was aware of the disability and how they used it to discriminate against you. *I think we have major issues with both claims since the black employee was fired for bad performance but you were not and they paid you for your leave and ultimately granted the disability.* Please focus solely on those issues with proof I can use to back it up—as of right now I don't see anything possibly to pull together to file.

(R. 127-2, at 7–8 (emphases added).) Dreher even noted her concern "about being sanctioned if we submit frivolous papers." (*Id.* at 11.) And prior to the November 1, 2024 deadline expiring, Dreher informed Olson that "I really don't have anything to use for opposition so I can't file" and that "I also don't want to run up a bill on you when I can see legally we don't have a path forward." (*Id.* at 13.) In response, Olson instructed Dreher, "Don't run up a bill." (*Id.*)

After the deadline had passed, Dreher confirmed again that no response had been filed and that summary judgment would be granted (*id.* at 17); communicated with Takeda's counsel requesting a discontinuance of the matter (Appellant's App. Vol. 2, Tab 264, at A312); engaged in negotiations on Olson's behalf, after Takeda's fee entitlement motion was filed (R. 89, at 1 ¶ 1; R. 128-1, at 8); and made multiple filings on Olson's behalf (Appellant's App. Vol. 2, Tab 264, at A314-16; R. 89; R. 91; R. 97.) That is, the record unambiguously refutes Olson's claim of "abandonment" by Dreher.

Rather, Olson's arguments amount to nothing more than her disagreements with her counsel's strategic decisions—some of which were ethically mandated. *See* Fla. R. Prof'l Conduct 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."). And a plaintiff's disagreement with the strategic decisions of her counsel does not afford a basis for relief under Rule 60(b). "[S]trategic miscalculation[s] and misinterpretations of the law do not warrant relief from judgment under Rule 60(b)." *In re Bonfiglio*, No. 18-8004, 2018 WL 5295879, at *4 (6th Cir. Oct. 24, 2018); *accord Chavez-DeRemer v. Med. Staffing of Am., LLC*, 147 F.4th 371,

416 (4th Cir. 2025) ("[S]trategic decisions made during the course of litigation—even if later second-guessed—will not justify relief under Rule 60(b)(6)."); *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) ("Rule 60(b)(6) should be only sparingly used and may not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.").

Bizarrely, in seeming acknowledgment that her communications with Dreher refute her claim of abandonment, Olson attempts to excerpt portions of communications and recharacterize them in a manner wholly irreconcilable with their original context. For example, Olson attempts to claim that Dreher's claim she had "nothing" to work with is evidence that she was missing some unidentified materials needed for a response. But that is not at all what Dreher had said.

Instead, the statement followed repeated entreaties to Olson to provide *information* concerning her own experiences that could support a legally viable claim. Indeed, it followed her observation that Takeda's "Motion for Summary Judgment is VERY strong so we need specific facts regarding the discrimination." (R. 127-2, at 5.) Dreher further observed, "I need specific examples of how YOU were discriminated against based on race and disability with evidence proving the allegations." (*Id.* at 7.) She also asked

Olson to "[p]lease explain your basis for each of the claims," noting that the realities of her experiences facially precluded her claims. (*Id.*) And her statement that she had "NOTHING in my possession to counter [Takeda's arguments]" was made in the context of her noting a lack of "evidence that supports our position while [Takeda] has quite a bit," and a request for Olson to provide any "PROOF" of her claims. (*Id.* at 11.)

Olson's appellate brief does not identify any particular document Dreher was missing that would have changed her conclusion. That is because there was none. Notably, these statements were made *after* Olson had provided Dreher with information and documents she believed, as a non-lawyer, to support her claims. (*Id.* at 4–7.) The reality is that Dreher said she had "NOTHING" precisely because there was no evidence ever supporting any viable claim for Olson. Dreher's decision to not file an opposition in light of that reality was strategic, an attempt to avoid sanctions, and a requirement of the applicable rules of professional conduct. (R. 127-1, at 3–4 ¶ 4; *see also* Fla. R. Prof'l Conduct 4-3.1.)

Separately, to the extent Olson attempts to base her motion on an alleged "fail[ure] to depose any individual fact witnesses, comparators, or supervisor with direct knowledge of discrimination" (Appellant's Br. at 32–

33), she failed to raise that argument in the district court. Thus, she waived the argument. *See Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.") Even so, the argument has no merit. Indeed, Rule 60(b)(6) — the only provision under which Olson seeks relief — simply does not afford a ground for a party to challenge the adequacy of her discovery after an adverse ruling is entered.[9] *See Simmons*, 241 F. App'x at 663 ("[C]laims of attorney error must be made under the more specific Rule 60(b)(1), rather than under the residual equitable authority contained in Rule 60(b)(6)."); *Juday v. Merck & Co Inc*, 799 F. App'x 137, 137-38 (3d Cir. 2020) (finding that prior counsel's failure to request any discovery did not fall to a level warranting Rule 60(b)(6) relief); *United States v. Davenport*, 668 F.3d 1316, 1325 (11th Cir. 2012) ("[B]oth the Supreme Court and this Court have emphasized that represented parties are not entitled to relief simply because they were penalized by the omissions of counsel."); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his

---

[9] The Eleventh Circuit "consistently has held that Rule 60(b)(1) and (b)(6) are mutually exclusive. Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *Solaroll Shade*, 803 F.2d at 1133.

representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

Thus, in light of the record evidence submitted below, the district court did not abuse its discretion in concluding that the conduct of Olson's counsel—particularly as it related to the decision not to oppose Takeda's summary judgment motion, which was the only matter properly preserved—did not present extraordinary circumstances that would justify relief under Rule 60(b)(6).

### B.    Olson Failed to Establish that She Had a Claim that Probably Would Have Been Successful.

While Olson cannot establish extraordinary circumstances for the reasons outlined above, her motion failed for a more fundamental reason: she had not made an affirmative showing of a claim that "probably would have been successful." *Solaroll Shade*, 803 F.2d at 1133; *accord Algaba v. Fla. Dep.'t of Corr.*, No. 22-12545, 2026 WL 972838, at *8 (11th Cir. 2026) (finding Rule 60(b) relief unavailable because petitioner could not show that underlying claim was meritorious).

Olson did not—and cannot—meet that burden. In fact, her argument is little more than a constellation of legal standards and buzzwords, without

citation to even a single fact or set of facts that would change the district court's decision below—which, again, was based overwhelmingly on Olson's own deposition admissions. (Appellant's Br. at 45.) She does not even mention disability or race discrimination *at all* in that discussion. Simply put, Olson's arguments ignore the specific grounds upon which the district court granted summary judgment (as well as the arguments raised below that the district court did not need to reach).

For example,[10] with respect to her race-based disparate treatment claims, Olson's arguments do not in any way address the district court's conclusion that "none" of the matters placed at issue by her "constitute an adverse employment action". (Appellant's App. Vol. 2, Tab 244, Pages A282–84.) She similarly has not provided any fact-based rebuttal, supported by governing law, to the district court's conclusion that there was no similarly situated comparator outside of her protected class who had been

---

[10] Given the utter lack of specifics in Olson's argument, Takeda highlights the general issues that Olson has failed to address. It notes, however, that additional evidence and argument concerning the plain insufficiency of Olson's claims are outlined in its summary judgment motion, the court's summary judgment order, and Takeda's response in opposition to Olson's Rule 60(b)(6) motion. (Appellant's App. Vol. 2, Tab 218, at A251–76; Appellant's App. Vol. 2, Tab 244, at A277–93; Appellant's App. Attachment #5, Tab 730, at A755–82.)

treated more favorably. (*Id.* at A286.) That, of course, is entirely unsurprising, given Olson's admission during her deposition that she had *no evidence* of a similarly situated non-white individual being treated more favorably than her, which the district court cited in granting summary judgment. (R. 77-1, at 293; Appellant's App. Vol. 2, Tab 244, at A286 n.2.) Nor did Olson point to specific evidence that would amount to a convincing mosaic.

With respect to her disability-based disparate treatment claims, her brief does not in any way engage the district court's conclusions that the claimed adverse actions were outright disproven by her own deposition testimony. (Appellant's App. Vol. 2, Tab 244, at A288.) Nor did she point to specific evidence refuting the district court's conclusion that she could not point to any *decisionmaker* who had knowledge of a disability prior to taking an adverse action. Again, that can hardly be surprising when Olson admitted during her deposition that she had no evidence that any decisionmaker in any alleged act she placed at issue had such knowledge. (R. 77-1, at 172–73.)

With respect to her disability-based retaliation claim, she again provided no response to the district court's conclusion that she could not establish any materially adverse action on which she could base a retaliation

claim. (Appellant's App. Vol. 2, Tab 244, at A290.) Nor did she respond to the district court's conclusions that she could not establish causation, and that she could not rebut Takeda's legitimate, nonretaliatory explanations for its actions. (*Id.* at A291.)

And with respect to her failure-to-accommodate, hostile work environment, and failure-to-promote claims, Olson's brief does not provide any argument at all—let alone one that undermines the specific conclusions reached by the district court in its summary judgment order (*Id.*, at A287, A289–93.)

Olson thus not only failed to show that she had a meritorious claim as to each of the claims for which judgment was entered, her arguments serve as a mere repetition of the frivolous arguments for which she has already been sanctioned below. (*Id.*, Tab 286, at A319–36.) And to the extent Olson attempted to claim the exact opposite of her deposition admissions in her post-judgment declaration, such an effort was properly disregarded under the sham-affidavit doctrine. *See, e.g.*, *Akins v. Fulton County*, 278 F. App'x 964, 968 (11th Cir. 2008) ("Under the sham affidavit concept, [w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such

an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

Thus, Olson's failure to present evidence and argument demonstrating that she would probably succeed on the merits, *Solaroll Shade*, 803 F.2d at 1133, offers a separate ground for affirming the district court's conclusion.

## C.    The District Court Did Not Commit Clear Error in Declining to Hold an Evidentiary Hearing.

Olson's contention that the district court was required to conduct an evidentiary hearing because of allegedly (though not actually) "conflicting evidence" (Appellant's Br. at 24) rests not only on a flawed premise, but one that has been expressly rejected in this Circuit. Even when "the resolution of [a party's] rule 60(b) claims require[s] fact finding, nothing in rule 60(b) or [Eleventh Circuit] case law interpreting it compel[s] the district court to hold an evidentiary hearing before making its findings." *Vasconcelo v. Miami Auto Max, Inc.*, 851 F. App'x 979, 985 (11th Cir. 2021). And thus, a court's "finding of fact is not clearly erroneous simply because it did not hold an evidentiary hearing." *Jenkins v. Anton*, 922 F.3d 1257, 1270–71 (11th Cir. 2019). Indeed, declining to hold an evidentiary hearing is entirely *within* a district court's

discretion. *See, e.g., Cano*, 435 F.3d at 1342–43 ("The district court did not abuse its discretion by denying Cano's request for an evidentiary hearing and to make specific findings of fact on the evidence she had submitted in support of her Rule 60(b) motion.").

Given the record before the district court—including extensive emails and text messages between Dreher and Olson (R. 127-2; R. 128-1)—there is simply no basis for concluding that the district court abused its discretion in determining that Olson's motion could be resolved without a hearing.[11]

## CONCLUSION

To prevail on her appeal, Olson was required to demonstrate that the district court abused its discretion in denying her request for the extraordinary relief provided by Rule 60(b)(6). She failed to do so, and the Court should therefore affirm the district court's order.

Respectfully submitted this 10th day of June 2026.

---

[11] An evidentiary hearing would also serve no purpose, given the independently dispositive failure of Olson to demonstrate a probably-meritorious claim, as discussed previously.

By: */s/ Andrew M. McKinley*

Andrew M. McKinley
amckinley@seyfarth.com
Shannon R. Cherney
scherney@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA  30309-3958
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with Fed. R. App. P. 32(a)(7)(B) and 11th Cir. R. 32-4 because the word count of relevant sections, based on Microsoft Word's word-counting function, totals 8,753 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Book Antiqua font.

*/s/ Andrew M. McKinley*
Andrew M. McKinley
*Counsel for Defendant–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026, a copy of the foregoing BRIEF OF DEFENDANT-APPELLEE was electronically filed with this Court via the electronic filing website which will electronically notify all counsel of record.

*/s/ Andrew M. McKinley*
Andrew M. McKinley
*Counsel for Defendant–Appellee*