**APPEAL NO.: 25-14527-A**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**SHANNON OLSON**

*Plaintiff-Appellant,*

**v.**

**TAKEDA PHARMACEUTICALS, AMERICA, INC.**

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA (TAMPA DIVISION)

CIVIL ACTION FILE NO. 8:23-cv-00590-TPB-CPT

---

**REPLY  BRIEF OF APPELLANT SHANNON OLSON**

---

July 1, 2026

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE</u>

1. Honorable Thomas P. Barber, United States District Judge for the Middle District of Florida

2. Rachel L. Dreher, Former Counsel for Plaintiff/Appellant

3. Dreher Law Group, Former Counsel for Plaintiff/Appellant

4. Law Offices of Jared M. Wichnovitz, P.C., Counsel for Plaintiff/Appellant

5. Law Office of Michael A. Yoder, PLLC, Former Counsel for Plaintiff/Appellant

6. Andrew M. McKinley, Esq. Counsel for Defendant/Appellee

7. Alex Meier, Former Counsel for Defendant/Appellee

8. Michael A. Mendoza, Former Counsel for Plaintiff/Appellant

9. Mendoza Family Law, Former Counsel for Plaintiff/Appellant

10. Mendoza Law, P.A., Former Counsel for Plaintiff/Appellant

11. Shannon Olson, Plaintiff/Appellant

12. Seyfarth Shaw LLP, Counsel for Defendant/Appellee

13. Takeda Pharmaceuticals America, Inc., Defendant/Appellee

14. Honorable Christopher P. Tuite, United States Magistrate Judge for the Middle District of Florida

15. Michael A. Yoder, Former Counsel for Plaintiff/Appellant

16. Yoder LaVeglia LLP, Former Counsel for Plaintiff/Appellant

17. Jared M. Wichnovitz, Counsel for Plaintiff/Appellant

C-1 of 1

Appellant, Shannon Olson, is an individual and has no parent corporations

or publicly held ownership interests to disclose.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT.................................................................................C-1

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES..............................................................................ii

ARGUMENT ....................................................................................................1

   I.   Appellee Misstates the Rule 60(b)(6) Inquiry by Treating This Appeal as a Review of Summary Judgment ..................................................................1

   II.   The District Court Abused Its Discretion by Resolving Material Factual Disputes Without an Evidentiary Hearing .......................................................3

      A.   Whether Counsel's Conduct Reflected Informed Strategy or Abandonment Was a Material Disputed Fact .......................................3

      B.   Appellant's Knowledge of the Decision Not to Oppose Was Genuinely Contested....................................................................................5

      C.   Counsel's Respective Roles and Control of the Litigation Were Materially Disputed ....................................................................................6

      D.   Appellant's Diligence Presented a Factual Dispute............................7

   III.   Appellee's Entire Merits Discussion Rests Upon an Incorrect Premise ........8

   IV.   The District Court Failed to Consider the Extraordinary Circumstances Collectively ....................................................................................................12

CONCLUSION ...............................................................................................15

CERTIFICATE OF COMPLIANCE ..............................................................17

CERTIFICATE OF SERVICE........................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Arthur v. Thomas*, 739 F.3d 611 (11th Cir. 2014)......................................................1

*Buck v. Davis*, 580 U.S. 100 (2017) .......................................................................9, 14

*Cano v. Baker*, 435 F.3d 1337 (11th Cir. 2006).........................................................1

*Holland v. Florida*, 560 U.S. 631 (2010) ................................................................14

*Kemp v. United States*, 596 U.S. 528 (2022)...............................................................9

*Klapprott v. United States*, 335 U.S. 601 (1949) .................................................1, 14

*Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir. 1976)............................7

*Maples v. Thomas*, 565 U.S. 266 (2012) .................................................................13

*SEC v. Simmons*, 241 F. App'x 660 (11th Cir. 2007) .........................................9, 10

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) ........................11

*Solaroll Shade & Shutter Corp. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130 (11th Cir. 1986) .................................................................................................................9

*United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977) ...............................................8

*Rules*

Fed. R. Civ. P. 60(b)(1).................................................................................................9

Fed. R. Civ. P. 60(b)(6)........................................................................................passim

## ARGUMENT

Rule 60(b)(6) permits relief from a final judgment for "any other reason that justifies relief" and serves as a "grand reservoir of equitable power" to do justice in extraordinary cases. *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949). Because the inquiry is equitable, a court must evaluate the totality of the circumstances rather than isolate individual events and must determine whether genuine disputes of material fact can be resolved on the papers at all. This Court reviews the denial of a Rule 60(b)(6) motion, and the denial of an evidentiary hearing on such a motion, for abuse of discretion. *Cano v. Baker*, 435 F.3d 1337, 1342–43 (11th Cir. 2006). That deferential review is not a shield for legal error: a district court necessarily abuses its discretion when it applies the wrong legal standard, and an error of law is itself an abuse of discretion reviewed de novo. *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014).

### I.    Appellee Misstates the Rule 60(b)(6) Inquiry by Treating This Appeal as a Review of Summary Judgment.

This appeal ultimately asks a narrow but important question. May a federal judgment become effectively unreviewable where counsel ceases functioning as the client's advocate during dispositive proceedings and the district court resolves sharply disputed questions concerning abandonment, diligence, and credibility without hearing testimony? Rule 60(b)(6), Supreme Court precedent, and the

1

equitable principles underlying the Federal Rules answer that question in the negative.

Appellee's response repeatedly argues that Appellant cannot ultimately prove discrimination. That argument never reaches the question presented; it treats a Rule 60(b)(6) appeal as a referendum on the merits. This appeal does not ask whether the district court correctly granted summary judgment. It asks whether the district court abused its discretion in denying Rule 60(b)(6) relief after resolving disputed factual issues, concerning attorney abandonment, diligence, and credibility, on a written record. A reviewing court does not affirm the summary resolution of contested facts by deciding them anew on appeal; it asks whether the district court could properly resolve them on the papers in the first instance.

Additionally, Appellee's response repeatedly assumes the correctness of the district court's factual findings rather than defending the procedure by which those findings were reached. That distinction matters. A reviewing court does not ask whether it independently agrees with the district court's credibility determinations. It asks whether those determinations could properly be made on a paper record at all.

Throughout its response, Appellee states as established fact what the Rule 60(b)(6) motion placed in dispute: that counsel made a considered strategic decision, that Appellant knowingly agreed, that she failed to act diligently, and that

2

no extraordinary circumstances existed. Those are not matters this Court may presume; they are the very questions the district court resolved on the papers and that Appellant contends could not be resolved that way. Treating them as settled does not answer the appeal; it assumes away the error. Appellee cannot obtain affirmance by assuming the truth of the propositions Appellant asked the district court to resolve through an evidentiary hearing.

## II.    The District Court Abused Its Discretion by Resolving Material Factual Disputes Without an Evidentiary Hearing.

The central issue in this appeal is procedural. Appellant's Rule 60(b)(6) motion presented multiple genuine disputes of material fact, concerning attorney abandonment, Appellant's knowledge, counsel's respective roles, and Appellant's diligence, that could not be resolved without determining whose account was credible.  The district court nonetheless resolved each on the written record, crediting substitute counsel's declaration over Appellant's sworn declaration, and denied relief without the evidentiary hearing Appellant requested at every stage below (R. 114; R. 124; R. 128). Under the circumstances presented here, that was an abuse of discretion.

### A. Whether Counsel's Conduct Reflected Informed Strategy or Abandonment Was a Material Disputed Fact.

The principal dispute was not whether counsel ultimately declined to file an opposition, but whether that decision reflected an informed litigation strategy or

the breakdown of the attorney-client relationship Appellant alleged throughout her motion. Appellee characterizes the record as a considered strategic decision. Appellant's evidence described something materially different.

Lead counsel was suspended from the practice of law sixteen days before the summary-judgment response deadline (R. 114-3 (Ex. T)), and Appellant's sworn declaration attests that she was not informed of the suspension before judgment (R. 128-1). Substitute counsel contemporaneously told Appellant that she lacked the case file, was not the attorney directing the litigation, and lacked the information needed to prepare a response (R. 128-1); her later declaration, however, characterized the decision not to oppose as a deliberate strategic choice (R. 127-1; R. 127-2). Whether counsel's conduct constituted informed strategy or abandonment could not be resolved by selecting one declaration over another without hearing testimony.

Appellee places particular weight on substitute counsel's October 31 message stating that, having reviewed "defendant's motion for summary judgment, the depositions and other discovery," she saw "no justifiable legal argument" to raise and "cannot in good faith put forth frivolous papers to the Court." (R. 128-1.) But the same message supplies the reason for that conclusion: she had not received "any proof that [Appellant had] that contradicts the papers filed by Defendant." (R. 128-1.) Her assessment thus rested not on a fully developed record but on the

4

evidentiary vacuum the breakdown produced, the comparator and management-knowledge evidence later submitted with the Rule 60(b)(6) motion (R. 114, Exs. V–W) had never been developed or placed in her hands. That a case which had survived successive motions to dismiss (R. 62), and which the District Court declined to treat as meritless when Appellee urged that there "really" was no case (R. 135 at 4), could be opposed only by "frivolous" filings is itself disputed. Whether substitute counsel's conclusion reflected informed strategic judgment or the consequence of a record stripped of Appellant's evidence is a credibility-laden question the declarations could not resolve.

### B. Appellant's Knowledge of the Decision Not to Oppose Was Genuinely Contested.

The District Court likewise resolved a disputed question concerning Appellant's knowledge and consent. The question was not whether Appellant knew her counsel was struggling, but whether she knew of a final, undisclosed decision to abandon the opposition.

The contemporaneous communications support Appellant's account. As late as the afternoon before the deadline, counsel was still requesting materials so the response could be "drafted and filed"; on the morning of the deadline Appellant wrote, "Prior to deciding let's please talk live"; later that afternoon, "NOT RESPONDING IS NOT AN OPTION"; counsel's first unequivocal statement that

5

she would not file came at 5:59 p.m.; and Appellant answered that she would "rather respond with something and let Judge Ba[r]ber decide than . . . say nothing at all." (R. 128-1.) Counsel never replied. Whether those messages establish informed consent or Appellant's continued insistence that an opposition be filed is a credibility question the district court resolved on declarations alone.

### C. Counsel's Respective Roles and Control of the Litigation Were Materially Disputed.

The motion also presented conflicting evidence about who controlled the litigation at the dispositive stage. The docket reflects that substitute counsel appeared as additional counsel (R. 42), while lead counsel was separately designated and remained counsel of record (R. 53). Substitute counsel's contemporaneous messages stated that she "wasn't the attorney on this," that the decisions "weren't [hers] to make," and that she lacked the complete file (R. 128-1); her declaration, by contrast, described the decision not to oppose as her own informed strategic judgment (R. 127-1; R. 127-2).

Her account of her own role is itself contested. At the January 17, 2024, case-management conference she told the court that "we sent the discovery responses last night" (R. 135 at 5), active involvement difficult to square with the peripheral role her declaration describes. Those competing descriptions of counsel's role were

material factual disputes whose resolution depended on evaluating credibility, not on comparing declarations on paper.

### D. Appellant's Diligence Presented a Factual Dispute.

The District Court resolved the reasonable-time inquiry on the written record as well. Rule 60(b)(6) requires reasonable diligence, not flawless conduct, and whether a motion is filed within a "reasonable time" depends on the circumstances of the particular case rather than a mechanical measure of elapsed time. See *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930–31 (5th Cir. 1976). Those circumstances are disputed here. A client cannot reasonably be charged with delay measured from a suspension her own counsel concealed from her; on Appellant's account, the period relevant to her diligence began when she learned of the concealed circumstances, not when they silently arose.

Appellant's account establishes that she moved to protect her rights once the concealment surfaced: new counsel appeared in June 2025 (R. 102), the litigation file was obtained from former counsel only thereafter (R. 128-1).

The Rule 60(b)(6) motion followed in October 2025 (R. 114). When Appellant discovered the suspension, how long obtaining that file required, and whether she thereafter acted with reasonable diligence are fact-bound questions. The district court resolved them against her, accepting Appellee's account that she should have acted sooner, without hearing testimony.

7

These disputes were not collateral; they formed the foundation of the district court's ruling. The court concluded that substitute counsel's declaration and the text messages rendered Appellant's account "at best, inaccurate" (R. 129). But the district court could resolve these disputes on the papers only if the record conclusively refuted Appellant's allegations, and it does not. The contemporaneous messages on which the court relied are consistent with Appellant's account; they reflect a client urging that an opposition be filed, and at a minimum do not foreclose her interpretation, which is precisely why the competing inferences could not be resolved without hearing the witnesses. See *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977). Under the circumstances presented here, where the dispositive issues depended upon competing sworn accounts concerning attorney abandonment, client knowledge, counsel's respective roles, and diligence, the district court abused its discretion by resolving those disputes without the evidentiary hearing Appellant requested (R. 114; R. 124; R. 128). The court's error was procedural, not factual.

## III.    Appellee's Entire Merits Discussion Rests Upon an Incorrect Premise.

Even setting the procedural error aside, Appellee's merits argument rests on the wrong legal standard, an error reviewed de novo. Appellee argues, in various forms, that Appellant cannot show she would probably prevail on her

8

discrimination claims. But Rule 60(b)(6) does not ask whether a movant will ultimately prevail. Rule 60(b)(6) asks whether extraordinary circumstances justify reopening and whether reopening would be futile.

Appellee invokes *Solaroll Shade & Shutter Corp. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986), for a heightened showing that the claim "probably would have been successful." That is the meritorious-defense element of the Rule 60(b)(1) standard for setting aside a default, which *Solaroll* itself held mutually exclusive with Rule 60(b)(6). *Id.*; accord *Kemp v. United States*, 596 U.S. 528, 533 (2022). Appellant seeks relief under Rule 60(b)(6); Appellee cannot import the default standard's heightened merits bar into that inquiry. Rule 60(b)(6) imposes no requirement that a movant prove she would ultimately prevail. The equitable inquiry instead asks whether extraordinary circumstances justify reopening, and in making that determination a court may weigh the apparent merit of the underlying claim together with all other relevant circumstances. See *Buck v. Davis*, 580 U.S. 100, 123–24 (2017). *Simmons* involved attorney negligence in the context of a default judgment. Unlike this case, it did not involve disputed evidence of attorney abandonment, disciplinary proceedings, conflicting declarations, or the complete collapse of the adversarial process. See *SEC v. Simmons*, 241 F. App'x 660, 663–64 (11th Cir. 2007). Neither *Solaroll* nor

9

*Simmons* suggests that the default-judgment standard governs a Rule 60(b)(6) motion alleging attorney abandonment and extraordinary circumstances.

Appellee's merits showing is also circular. It uses the unopposed summary-judgment record to argue that reopening would be futile, while ignoring that the Rule 60(b)(6) motion challenges the very circumstances that produced that one-sided record. The record's one-sidedness is the product of the breakdown at issue: the only deposition before the district court on summary judgment is Appellee's deposition of Appellant (R. 77-1), even though plaintiff's counsel took the deposition of Appellee's Rule 30(b)(6) corporate representative on September 5, 2024 (R. 136 at 3), testimony that never reached the court because no opposition was filed. Appellant's motion further identified evidence in counsel's possession, produced only after successor counsel obtained the case file, that was never presented in opposition to summary judgment (R. 114). A movant cannot be required to prove, on a record the breakdown stripped of her evidence, that the breakdown caused her no prejudice.

Nor are the claims futile on a developed record. The operative complaint survived Appellee's motion to dismiss (R. 62) and pleaded specific comparator allegations under the very policies Appellee invoked against Appellant (R. 56; R. 57-3), allegations never tested because no opposition was filed. And the Rule 60(b)(6) motion did not rest on the pleadings alone: it was supported by

10

declarations and documentary evidence (R. 114) that the breakdown in representation kept out of the summary-judgment record. The futility question is therefore not whether the existing, one-sided record would survive summary judgment; it is whether a record developed free of that breakdown could permit a reasonable jury to infer discrimination. It could. Viewed cumulatively rather than in isolation, circumstantial evidence of disparate treatment, inconsistent application of policy, and comparator treatment can establish the "convincing mosaic" from which a jury may infer intentional discrimination. See *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The point is concrete here: the summary-judgment ruling found "no evidence that any decisionmaker . . . had knowledge of any particular disability" (R. 81 at 12–13), yet the Rule 60(b)(6) motion placed before the court the very evidence that finding assumed did not exist, deposition testimony and contemporaneous human-resources correspondence reflecting management's awareness of Appellant's disability and protected leave (R. 114, Exs. V–W), absent from the summary-judgment record only because no opposition was filed. Whether Appellant's claims would ultimately succeed is a question for adversarial briefing on a complete record, not one answered by the absence of any opposition.

Appellee's recurring assertion that this case never had a basis in fact or law is belied by the contemporaneous record. The claims survived successive rounds of

11

motion-to-dismiss practice. Earlier in the litigation, when Appellee argued there "really" was no case, the court rejected that characterization, replying, "Well, you're wrong." (R. 135 at 4.) Appellant does not offer that exchange as a merits finding. It shows only that, before judgment was entered on an unopposed motion, the litigation was actively progressing, and the claims were not regarded as frivolous, which is all the non-futility inquiry requires.

## IV.   The District Court Failed to Consider the Extraordinary Circumstances Collectively.

Rule 60(b)(6) requires the extraordinary-circumstances inquiry to be conducted on the totality of the circumstances, not by isolating each fact and dismissing it in turn. The district court did the latter, and Appellee defends that approach. Viewed chronologically, the record reveals a progressive breakdown in representation that left Appellant without effective advocacy at the decisive moment.

The sequence is this. Lead counsel's representation deteriorated throughout the case amid pending Virginia State Bar disciplinary proceedings. Those proceedings culminated in his suspension from the practice of law, effective sixteen days before Appellant's summary-judgment response was due (R. 114-3 (Ex. T)). Appellant's sworn declaration establishes that lead counsel never disclosed the suspension, telling her only that he could not "do anything lawyerly"

12

while remaining counsel of record (R. 128-1). See *Maples v. Thomas*, 565 U.S. 266, 286, 288–89 (2012). Substitute counsel appeared but contemporaneously advised Appellant that she lacked the complete case file from lead counsel and was not the attorney responsible for the litigation's strategic decisions (R. 128-1). No opposition to summary judgment was filed. Critical discovery already completed, including the September 5, 2024, deposition of Appellee's Rule 30(b)(6) corporate representative, was never presented to the district court. Evidence reflecting management's awareness of Appellant's disability and protected leave, later presented with the Rule 60(b)(6) motion (R. 114, Exs. V–W), was never placed before the court on summary judgment because no opposition was filed. After judgment, successor counsel had to retrieve the litigation file from former counsel before the grounds for relief could be fully developed. The declarations describing these events sharply conflict on core issues of notice, authority, and strategy.

This breakdown occurred against the backdrop of a case the district court did not treat as frivolous. At the August 28, 2024, case-management conference, mere days before the September 5, 2024, 30(b)(6) deposition, Judge Barber noted that Appellant had worked as a pharmaceutical representative for over twenty years and characterized the matter as a "reverse-discrimination-type case" (R. 136 at 2), observed that plaintiff's counsel "thinks he's got a good case here," and reserved judgment— "So we'll see." (R. 136 at 4.) Appellant does not offer these remarks

13

as merits findings; they show only that, before judgment was entered on an unopposed motion, the litigation was actively progressing and was not regarded as frivolous.

No single circumstance, viewed in isolation, need compel relief. But Rule 60(b)(6) does not ask whether any one fact is independently sufficient. It asks whether, taken together, they present the kind of extraordinary situation in which enforcing the judgment would work a manifest injustice. *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949); see *Buck*, 580 U.S. at 123–24; *Holland v. Florida*, 560 U.S. 631 (2010). A concealed suspension, fragmented and conflicted representation, an abandoned defense to a dispositive motion, an undeveloped record stripped of available evidence (including the 30(b)(6) deposition and the disability-awareness evidence later submitted with the Rule 60(b)(6) motion), and a diligent client left without an advocate at the critical moment are, in combination, extraordinary. The District Court's failure to weigh these circumstances collectively, and its resolution of the resulting factual disputes on declarations alone, was legal error and an abuse of discretion.

No one of these circumstances viewed alone necessarily required Rule 60(b)(6) relief. But Rule 60(b)(6) expressly rejects such compartmentalized analysis. The extraordinary nature of this case lies in the convergence of all of

14

these circumstances at the single most consequential stage of the litigation. Final judgment was entered not after adversarial testing of the evidence, but after the adversarial process itself had broken down. That is precisely the type of manifest injustice Rule 60(b)(6) exists to prevent.

This appeal is not about whether Ms. Olson ultimately proves discrimination. Nor is it about excusing ordinary attorney negligence. It is about preserving confidence in the integrity of federal judicial proceedings. The adversarial process functions only when each party is afforded meaningful representation before judgment is entered. Where substantial evidence suggests that representation collapsed during dispositive proceedings and the district court nevertheless resolved disputed questions concerning abandonment, diligence, and credibility without hearing testimony, Rule 60(b)(6) requires more than a paper determination. Appellee never confronts the motion Appellant actually presented, and its response therefore supplies no principled basis to affirm. Because that did not occur here, reversal is warranted.

## **CONCLUSION**

For all of the foregoing reasons, Appellant respectfully requests that this Court reverse the order denying Rule 60(b)(6) relief, vacate the order denying an evidentiary hearing, and remand this matter with instructions that the district court

conduct an evidentiary hearing and reconsider Appellant's Rule 60(b)(6) motion upon a complete factual record. Such relief will not determine the merits of Appellant's employment claims. It will simply restore the adversarial process that Rule 60(b)(6) exists to protect when extraordinary circumstances prevent a litigant from receiving a fair opportunity to be heard.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

By: /s/*Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,264 words, and therefore complies with the 6,500-word limit for reply briefs. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in 14-point Times New Roman, a proportionally spaced typeface.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

By: /s/ *Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of July 2026 I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using PACER'S CM/ECF system. I also certify that the foregoing document is being served this day upon all counsel of Record via PACER'S CM/ECF system.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

By: /s/*Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Fax: (732) 358-0178
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff-Appellant, Shannon Olson*

18