**APPEAL NO. 25-14527**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**SHANNON OLSON,**

*Plaintiff–Appellant,*

v.

**TAKEDA PHARMACEUTICALS AMERICA, INC.,**

*Defendant–Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA (TAMPA DIVISION)
CIVIL ACTION FILE NO. 8:23-cv-00590-TPB-CPT

---

**APPELLANT'S RESPONSE IN OPPOSITION TO
APPELLEE'S MOTION FOR SANCTIONS**

---

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff–Appellant, Shannon Olson*

1

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-4, and 27-1(a)(9), Appellant Shannon Olson certifies that the following persons and entities have or may have an interest in the outcome of this appeal:

Barber, Hon. Thomas P., United States District Judge, Middle District of Florida;

Cherney, Shannon R., Counsel for Defendant–Appellee;

Dreher, Rachel L., Former Counsel for Plaintiff–Appellant;

Dreher Law Group, Former Counsel for Plaintiff–Appellant;

Law Offices of Jared M. Wichnovitz, P.C., Counsel for Plaintiff–Appellant;

Law Office of Michael A. Yoder, PLLC, Former Counsel for Plaintiff–Appellant;

McKinley, Andrew M., Counsel for Defendant–Appellee;

Meier, Alexander C., Former Counsel for Defendant–Appellee;

Mendoza, Michael A., Former Counsel for Plaintiff–Appellant;

Mendoza Family Law / Mendoza Law, P.A., Former Counsel for Plaintiff–Appellant;

Olson, Shannon, Plaintiff–Appellant;

Seyfarth Shaw LLP, Counsel for Defendant–Appellee;

Takeda Pharmaceuticals America, Inc., Defendant–Appellee;

Takeda Pharmaceutical Company Limited, publicly traded parent of Defendant–Appellee (NYSE: TAK; Tokyo Stock Exchange);

Tuite, Hon. Christopher P., United States Magistrate Judge, Middle District of Florida;

Wichnovitz, Jared M., Counsel for Plaintiff–Appellant;

Yoder, Michael A., Former Counsel for Plaintiff–Appellant;

Yoder LaVeglia LLP, Former Counsel for Plaintiff–Appellant.

No publicly traded company or corporation has an interest in the outcome of this appeal other than as disclosed above. Appellant Shannon Olson is an individual and has no parent corporation or publicly held ownership interests to disclose.

**INTRODUCTION**

Unable to demonstrate that this appeal is objectively frivolous, Defendant-Appellee Takeda Pharmaceuticals America, Inc., (hereinafter "Appellee" or alternatively "Takeda") instead asks this Court to punish Appellant for exercising her statutory right to appellate review. Its motion seeks attorney's fees and double costs against a single individual, a pharmaceutical sales representative employed by Takeda for more than two (2) decades (R. 62 at 7), on top of the six-figure fee award Takeda separately seeks below, exceeding $339,000.00 (R. 113 at 10). The motion should be denied. It would transform Rule 38 from a narrow safeguard against objectively frivolous appeals into a penalty for pursuing a good-faith dispute over the proper application of Rule 60(b)(6).

Rule 38 is reserved for appeals that are "utterly devoid of merit." *Bonfiglio v. Nugent*, 986 F.2d 1391, 1393 (11th Cir. 1993). This appeal is not remotely that. The existence of substantial questions warranting full appellate consideration underscores why sanctions are inappropriate. It presents a discrete procedural question of exceptional importance, whether a district court may resolve sharply disputed, credibility-dependent questions of attorney abandonment, client knowledge, and diligence on competing paper declarations, without the evidentiary hearing Rule 60(b)(6) and this Court's precedent contemplate. That question is briefed on the authority of five decisions of the Supreme Court of the United States,

4

including *Klapprott*, *Maples*, *Holland*, *Buck*, and *Kemp*. An appeal grounded in binding Supreme Court authority is the antithesis of one "utterly devoid of merit." Rule 38 exists to protect the appellate courts from objectively frivolous litigation, not to deter litigants from pursuing good-faith procedural appeals that raise unsettled applications of Rule 60(b)(6).

Appellee's motion never engages that question. Instead, it re-argues the merits of Ms. Olson's discrimination claims, claims the district court never adjudicated on an adversarial record because no opposition to summary judgment was ever filed. In doing so, Takeda commits the same error that pervades its response brief: it conflates a frivolous appeal with frivolous claims. Rule 38 asks only the former. Every one of Takeda's asserted grounds fails that test, and the equities, here, a motion to impose more than $339,000.00 in fees and double costs on the very client whose lawyers abandoned her, forbid the extraordinary relief Appellee seeks.

## LEGAL STANDARD

Rule 38 permits "just damages and single or double costs" only "[i]f a court of appeals determines that an appeal is frivolous." Fed. R. App. P. 38. Sanctions are an extraordinary remedy, reserved for the clearest cases. An appeal is frivolous only when it is "utterly devoid of merit." *Bonfiglio*, 986 F.2d at 1393. The inquiry turns on the merit of the appeal, the appellate arguments actually presented, not on whether the appellant ultimately prevails, and not on the strength of the underlying claims

5

resolved below. An appeal that raises a genuine, debatable question of law or one on which reasonable jurists could differ is not frivolous, even if it does not succeed. Because that standard is so demanding, doubt about whether an appeal crosses the line into frivolousness is resolved against the party seeking sanctions.

Appellee also invokes the Court's "inherent authority." That power is narrower still: inherent-power sanctions require a finding of subjective bad faith. Nothing in this record supports such a finding, and Takeda identifies none. An appeal prosecuted by counsel of record on the strength of controlling Supreme Court precedent, on behalf of a client contending she was the victim of her prior lawyers' abandonment, is not bad-faith litigation.

## ARGUMENT

### I. Appellee attacks the wrong target: Rule 38 asks whether the appeal is frivolous, not whether the underlying claims were strong.

The defining flaw in Appellee's motion is that it is aimed at the wrong subject matter. Almost the entirety of its argument is devoted to the supposed weakness of Ms. Olson's discrimination claims, her deposition testimony, the comparator analysis, the motions to dismiss rulings. But this appeal does not ask this Court to decide whether Ms. Olson will ultimately prevail on the merits. It asks whether the district court abused its discretion in denying Rule 60(b)(6) relief, and in resolving

disputed, credibility-laden facts about attorney abandonment on the papers without an evidentiary hearing.

The scale of Appellee's own response undercuts its motion. To answer an appeal, it now brands "utterly devoid of merit," Takeda filed a fifty-five (55) page merits brief (Doc. 20), including a supplemental appendix. That effort does not prove the appeal meritorious, but it is difficult to square with the claim that the appeal is frivolous: a litigant does not ordinarily marshal a record of that size to refute an argument beneath serious engagement. Takeda cannot brief this case as a substantial one and simultaneously ask this Court to sanction Ms. Olson for treating it as substantial.

Whether Ms. Olson ultimately prevails on her employment claims and whether this appeal is frivolous are legally distinct questions governed by entirely different standards. Even an appeal from the denial of relief in a case with a difficult merits posture is not frivolous where it raises a substantial procedural question about how the judgment was reached. Takeda cannot convert a contested merits record, one that was never tested adversarially because no opposition was filed, into a basis for branding the appeal frivolous. The frivolousness of an appeal is measured by the appellate arguments presented; Appellee does not, and cannot, show that the abandonment-and-hearing question is "utterly devoid of merit."

Nowhere does Appellee demonstrate that Appellant's legal position is foreclosed by binding precedent, or that no reasonable advocate could advance it, the only showing that could support a finding of frivolousness. Rule 38 is not a substitute for prevailing on the merits: where the parties genuinely dispute the application of controlling precedent to a developed record, the proper course is to decide the appeal, not to punish the appellant for bringing it.

## II.     An appeal resting on multiple controlling Supreme Court decisions cannot be "utterly devoid of merit."

One strong indication that an appeal is not frivolous is that it rests on a reasoned application of controlling precedent. Ms. Olson's appeal is built on binding authority. Rule 60(b)(6) is a "grand reservoir of equitable power" to do justice in extraordinary cases. *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949). Whether counsel's conduct amounted to abandonment severing the ordinary agency attribution to the client is governed by *Maples v. Thomas*, 565 U.S. 266 (2012), and *Holland v. Florida*, 560 U.S. 631 (2010). Whether a court weighing extraordinary circumstances may consider the apparent merit of the underlying claim together with all other circumstances is addressed in *Buck v. Davis*, 580 U.S. 100, 123–24 (2017). And whether the district court applied the correct legal framework is informed by *Kemp v. United States*, 596 U.S. 528 (2022).

8

The abandonment question at the core of this appeal is a direct application of *Maples*. There, the Supreme Court recognized the "essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client," *Maples v. Thomas*, 565 U.S. 266, 281–82 (2012) (quoting *Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito, J., concurring)), and held that "a client cannot be charged with the acts or omissions of an attorney who has abandoned him," nor "be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him," *Id.* at 283. Those principles map onto this record. Appellant's lead counsel was operating under an undisclosed suspension of his license, never moved to withdraw, and left her without a functioning advocate when no opposition to summary judgment was filed (R. 114; R. 114-3 (Ex. T)), so that the court's records continued to reflect that she was represented. That is not hypothetical: former lead counsel remains listed as retained counsel for Appellant on this Court's own docket, and this Court's docketing notice directed to him was returned as undeliverable (Doc. 14). Whether those facts establish abandonment warranting Rule 60(b)(6) relief is a serious, good-faith application of binding Supreme Court precedent, the antithesis of a frivolous position.

Appellee's attack on Appellant's articulation of the merits prong proves the same point. Takeda faults Appellant (Mot. 8 n.2) for describing her burden as

showing a "potentially" meritorious claim, calling that formulation unsupported and "wrong," and insisting she must show the claim "probably would have been successful" under *Solaroll*. But that objection only confirms the standard is contested. *Solaroll*'s "probably would have been successful" language is the meritorious-defense element of the Rule 60(b)(1) default standard, and *Solaroll* held the (b)(1) and (b)(6) grounds mutually exclusive; Takeda cannot invoke that holding and simultaneously import the (b)(1) merits bar into a (b)(6) motion. *Solaroll*, 803 F.2d at 1133. And the phrase Takeda brands baseless is this Court's own: the very default-judgment decision Takeda elsewhere relies upon asks whether the movant showed a "potentially meritorious defense." *SEC v. Simmons*, 241 F. App'x 660, 663–64 (11th Cir. 2007).

At a minimum, the articulation of the merits requirement is sufficiently debatable that reasonable advocates, and even decisions of this Court, have employed different formulations, foreclosing any suggestion that Appellant's argument is frivolous.

An appellant advancing reasoned arguments under this body of Supreme Court law is not filing a frivolous appeal; she is doing precisely what the appellate process exists to permit. That the appeal further relies on *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977) (abandonment warranting a hearing), *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (a District Court abuses its discretion when it

applies an incorrect legal standard), only underscores the point. Whatever the ultimate outcome, an appeal supported by this quantity of on-point, controlling authority is debatable at worst, and a debatable appeal is not sanctionable.

Tellingly, Takeda's own authorities prove the question is contested rather than settled. Takeda relies on *Cano v. Baker*, 435 F.3d 1337 (11th Cir. 2006), and *Vasconcelo v. Miami Auto Max, Inc.*, 851 F. App'x 979 (11th Cir. 2021), for the proposition that a District Court need not always hold an evidentiary hearing on a Rule 60(b) motion. Ms. Olson relies on *Cano* too, for the governing standard of when a hearing is required and when the denial of one is an abuse of discretion. When both parties cite the same precedent for competing applications to the facts, the appeal presents exactly the kind of genuine dispute that Rule 38 does not reach. A question on which the parties can each marshal circuit authority is not "utterly devoid of merit."

Takeda's own response brief confirms the point twice over. First, Takeda repeatedly invokes the deferential standards that govern this appeal, arguing that the abuse-of-discretion standard affords the District Court a "range of choice," that the "Rule 60(b) movant's burden is a heavy one on appeal," and that factual findings are reviewed only for clear error. An appeal that asks whether a District Court exceeded its "range of choice" in resolving disputed facts on the papers is, by its nature, a

debatable one; parties do not brief the boundaries of judicial discretion in appeals that are "utterly devoid of merit."

Second, Takeda devotes a full footnote of its brief to distinguishing Ms. Olson's Supreme Court authorities, *Cirami*, *Holland*, and *Maples*, on their facts. That concession is fatal to the sanctions motion: an appellant who invokes the correct legal framework, and whose adversary must labor to distinguish binding Supreme Court precedent rather than dismiss it as inapplicable, has not filed a frivolous appeal. She has framed a genuine legal dispute about how that precedent applies.

Even if this Court ultimately rejects Appellant's Rule 60(b)(6) arguments, rejection on the merits does not establish frivolousness. Reasonable jurists could disagree over whether disputed attorney-abandonment evidence may be resolved on competing declarations without live testimony. Rule 38 is reserved for arguments no reasonable advocate could make. This appeal, grounded in controlling Supreme Court authority, supported by record citations, and prosecuted by counsel after independent review of the record, is plainly not such a case.

**III.    The very evidence Appellee marshals confirms a genuine, credibility-dependent dispute, which is precisely why appealing the denial of a hearing is not frivolous.**

Takeda's response brief devotes its strongest pages to the contemporaneous communications between Ms. Olson and her former counsel, quoting messages in which counsel expressed doubt about the claims and declined to file. Takeda reads

12

those messages as proof of an informed, client-approved strategic decision. But the same messages, which both parties placed before the district court (R. 127-2 (filed by Takeda); R. 128-1 (filed by Appellant)), point the other way. As late as the afternoon before the deadline, counsel was still requesting materials so a response could be "drafted and filed"; on the morning of the deadline Ms. Olson wrote, "Prior to deciding let's please talk live"; that afternoon she wrote, "NOT RESPONDING IS NOT AN OPTION"; and after counsel's first unequivocal statement that she would not file, Ms. Olson answered that she would "rather respond with something and let Judge Ba[r]ber decide than . . . say nothing at all." Counsel never replied. (R. 127-2; R. 128-1.)

That is the entire point. The record contains messages pointing in both directions, and the two (2) accounts cannot be reconciled without deciding whose characterization is credible, whether counsel's conduct reflected informed strategy to which the client consented, or an abandonment of an opposition the client was actively demanding. Takeda's ability to assemble a one-sided narrative from a two-sided record does not resolve that dispute; it demonstrates it. An appeal contending that such a credibility-laden dispute could not be resolved on competing paper declarations and required the evidentiary hearing Ms. Olson requested at every stage below (R. 114; R. 124; R. 128), is a serious procedural argument, not a frivolous one. Takeda may yet persuade this Court that its reading of these communications is

the better one. That possibility has nothing to do with Rule 38. Rule 38 asks whether Ms. Olson's contrary reading is so objectively unreasonable that no competent lawyer could advance it, and it plainly is not.

Takeda separately points to filings Dreher made after the summary-judgment deadline, including a February 24, 2025, notice stating that "Plaintiff does not dispute that there is an entitlement to some attorneys' fees" (R. 88 at 1 ¶ 2), and a November 19, 2024, email asking Takeda's counsel to "stipulate to a discontinuance of the matter" (R. 84-1 at 2; App. Vol. 2, Tab 264 at A312), as proof that Ms. Olson was "not abandoned." Those were unilateral acts of counsel, and the record shows they were taken by an attorney who, in her own words, "was not the lead attorney"; whose "representation was limited to covering an appearance on a Motion to Dismiss, attending mediation . . . and [filing] one response to the Motion for attorney fees," while "all the other work and depositions and drafting were . . . done by Mr. Yoder"; who did not possess the complete case file; and who "never billed Ms. Olson and . . . never received any payment" from her (R. 128-1; R. 128-2). Concessions of that kind, a solicitation of dismissal and an acknowledgment of fee entitlement, made by such an attorney, during the same period in which lead counsel's suspension was concealed from Ms. Olson (R. 114-3 (Ex. T)), are at least as consistent with a collapse of representation as with authorized strategy. The existence of competing declarations underscores why an evidentiary hearing was necessary.

14

They cannot be attributed to Ms. Olson as her own considered acceptance that her claims were frivolous or that fees were warranted, and they cannot render her appeal frivolous. If anything, they deepen the very abandonment dispute the district court resolved without a hearing.

## IV.    Appellee's sanctions authorities are tax-protester and vexatious-litigant cases that bear no resemblance to this appeal.

Every case Takeda cites to justify fees-plus-double-costs involved a category of litigant this record does not contain. *Biermann v. Commissioner*, 769 F.2d 707 (11th Cir. 1985), and *Stubbs v. Commissioner*, 797 F.2d 936 (11th Cir. 1986), were tax-protester appeals in which the appellants pressed positions that had been "consistent[ly] reject[ed] by courts at all levels" and that the law regarded as patently baseless. *Lapinski v. St. Croix Condominium Ass'n*, 739 F. App'x 519 (11th Cir. 2018), involved an appellant who had already been adjudicated a "vexatious litigant*"* by the court. Those are the paradigms Rule 38 exists to address.

Ms. Olson is none of these things. She is a long-tenured employee, now represented by new counsel, advancing a first appeal from the denial of a Rule 60(b)(6) motion on the strength of Supreme Court precedent. She has never been declared a vexatious litigant. She has never been sanctioned for a frivolous filing. And critically, Takeda's "well warned" cases required that the litigant have been warned that the very position pressed on appeal was frivolous. See *Biermann*, 769

15

F.2d at 708 n.1. No court ever warned Ms. Olson that an appeal from a Rule 60(b)(6)

denial, or a request for an evidentiary hearing on attorney abandonment, was

frivolous. The district court's comments on which Takeda relies addressed the

pleaded claims at the motion-to-dismiss and fee-entitlement stages, not the

abandonment-and-hearing questions this appeal actually presents.

## V. The district court permitted this case to proceed through pleadings, discovery, and toward trial, and never regarded it as frivolous.

Takeda's central premise, that Ms. Olson was "warned repeatedly" her case

was frivolous, cannot be squared with the district court's own words, now part of the

record before this Court. When Takeda's counsel told the court, "we don't really

think there is a case," Judge Barber replied: "Well, you're wrong." (R. 135 at 4; Doc.

26 at B016.) The court continued: "She's going to stay in court. You're not going to

be able to get rid of it altogether." (*Id.*) At a later conference, the court described the

matter as a "reverse-discrimination-type case" (R. 136 at 2; Doc. 26 at B021),

observed that plaintiff's counsel "thinks he's got a good case here," and reserved

judgment, "So we'll see. We'll see." (R. 136 at 4; Doc. 26 at B023.) At minimum,

the District Court itself initially viewed the surviving claims as sufficiently

substantial to proceed through discovery.

These are not the remarks of a court that viewed the litigation as facially

meritless at that stage of the proceedings. The court twice declined to dismiss the

16

surviving race- and disability-discrimination claims (R. 62), permitted full discovery and set the matter for trial. A case a district judge affirmatively refused to call meritless, telling the defendant to its face that it was "wrong" to say there was no case, cannot support a determination that the appeal defending that case is "utterly devoid of merit." Ms. Olson does not offer these remarks as merits findings; she offers them for the narrow and dispositive point that this litigation was live, contested, and non-frivolous in the eyes of the very court that presided over it.

Takeda's reliance on the fee-entitlement recommendation (R. 107; R. 108) does not change the analysis. That determination addressed the *claims* on an unopposed summary-judgment record, the very record that Ms. Olson's Rule 60(b)(6) motion contends was produced by the collapse of her representation. A fee-entitlement finding entered because no opposition was ever filed cannot bootstrap a conclusion that the appeal challenging that collapse is frivolous. That reasoning is precisely the circularity the appeal exists to test.

## VI. Appellee's "delay tactic" theory is refuted by the record: no fee award exists to thwart, and the district court deferred the fee question until after this appeal.

Takeda repeatedly insinuates that Ms. Olson filed her Rule 60(b)(6) motion and this appeal as a "last-ditch effort to thwart" a fee award. The record forecloses that theory. On January 8, 2026, the district court denied Takeda's motion to fix the

amount of fees (R. 113) without prejudice and expressly permitted Takeda to renew that motion only "within twenty-one days after the resolution of Plaintiff's appeal." (R. 132.) In other words, no fee amount has been awarded, and the court itself concluded it was prudent to await this appeal before fixing any amount. There is no looming award for the appeal to "thwart," and the district court did not treat the appeal as a delay tactic, it treated it as the natural predicate to resolving fees at all.

The chronology Takeda supplies undercuts its own narrative. Fee entitlement was recommended in July 2025 (R. 107) and adopted shortly after (R. 108), months before the October 2025 Rule 60(b)(6) motion (R. 114). The 60(b)(6) motion and this appeal followed successor counsel's appearance (R. 102) and the retrieval of the litigation file from former counsel, through which the concealed suspension of lead counsel first surfaced. A motion prompted by the discovery of counsel's concealed suspension is not a motion filed to dodge a fee award that does not yet exist.

## VII. Sanctioning the client personally would invert the equities and punish the victim of the very abandonment the appeal challenges.

Even if this appeal were frivolous, and it is not, Rule 38 damages are discretionary and equitable, and the equities here run overwhelmingly against them. The premise of this appeal is that Ms. Olson lost her case not on the merits but because her representation collapsed at the decisive moment: lead counsel was suspended from the practice of law sixteen (16) days before the summary-judgment

18

response deadline and concealed the suspension from her (R. 114-3 (Ex. T); R. 128-1); substitute counsel contemporaneously advised her that she "wasn't the attorney" directing the litigation and lacked the complete case file (R. 128-1); and no opposition to summary judgment was ever filed, keeping from the court the Rule 30(b)(6) deposition and disability-awareness evidence later submitted with the Rule 60(b)(6) motion (R. 114, Exs. V–W).

Takeda now asks this Court to impose fees and double costs on Ms. Olson personally for pursuing the argument that this collapse was not hers to bear. To sanction the client for appealing her own lawyers' abandonment would invert the equitable purposes underlying Rule 60(b)(6): it would punish the very person the equitable rule exists to protect and would chill litigants with legitimate abandonment claims from ever seeking review. A monetary penalty of the magnitude Takeda seeks, six figures in fees, plus doubled costs, against an individual, would be substantial, and it is sought against the one participant in this litigation least responsible for the record Takeda complains of. That is not a "just" award within the meaning of Rule 38; it is the opposite.

The inequity is sharpest as to fees, where the record reflects not Ms. Olson's considered acceptance of liability but the disarray of her representation. On February 24, 2025, Dreher filed a notice, signed by counsel, not by Ms. Olson, stating that "Plaintiff does not dispute" an "entitlement to some attorneys' fees" (R. 88 at 1 ¶ 2),

yet weeks later filed a brief opposing Takeda's fee entitlement outright (R. 91). Those contradictory positions were taken by an attorney who, on her own account in the record, was not lead counsel, lacked the complete case file, and was never retained for pay by Ms. Olson (R. 128-1; R. 128-2), during the same period in which lead counsel's suspension remained concealed. To impose fees and double costs on Ms. Olson personally, for appealing a judgment produced by that representational collapse, would not serve Rule 38's purpose. It would compound the very failure this appeal exists to remedy.

**VIII.  This is a counsel-filed, counsel-driven appeal prosecuted on controlling authority, further confirming it is not frivolous or brought in bad faith.**

This appeal was filed, briefed, and prosecuted by licensed counsel of record, who signed each filing subject to the certification obligations of Rule 32 and the Rules of Appellate Procedure, and who marshaled extensive Supreme Court and circuit authority in support of the arguments presented. The appeal was filed only after successor appellate counsel independently reviewed the record, researched the governing law, and concluded that the Rule 60(b)(6) issues warranted appellate review. That an experienced attorney reached that conclusion is powerful evidence that the appeal is not "utterly devoid of merit." It also defeats any suggestion of the subjective bad faith that inherent-power sanctions require. Whatever else may be

20

said, this is not a pro se litigant recycling positions rejected "at all levels," but a represented appellant pressing a considered, authority-backed procedural challenge.

At a minimum, that reality forecloses the extraordinary step of imposing punitive sanctions on the client herself. Courts reserve Rule 38 for appeals no reasonable lawyer could file. The appeal before this Court does not fit that description.

## CONCLUSION

This appeal presents a substantial, authority-backed question about whether a federal judgment may become effectively unreviewable when a client's representation collapses during dispositive proceedings and the district court resolves disputed questions of abandonment, knowledge, and diligence on the papers. That question is debatable, substantial, and grounded in controlling Supreme Court precedent.

This is not frivolous, and Appellee's attempt to recast a contested merits record as a basis for sanctions cannot make it so.

For the foregoing reasons, Appellant respectfully requests that the Court deny Appellee's Motion for Sanctions in its entirety.

Dated: July 20, 2026

Respectfully submitted,
**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**


By: /s/ *Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.
EDF# 334082767
50 Harrison Street, Suite 206, P.O. Box 631
Hoboken, New Jersey 07030
Phone: (732) 765-2157
Email: Jared@WichnovitzLaw.com
*Attorneys for Plaintiff–Appellant, Shannon Olson*

## CERTIFICATE OF COMPLIANCE

1. This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts exempted by Rule 32(f), it contains 4,202 words, and therefore is within the 5,200-word limit for a response to a motion.

2. This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

By: /s/ *Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20 day of July 2026, I electronically filed the foregoing Appellant's Response in Opposition to Appellee's Motion for Sanctions with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the PACER CM/ECF system, which will serve a copy upon all counsel of record.

By: /s/ *Jared M. Wichnovitz*
Jared M. Wichnovitz, Esq.